**Case No. 5:19-cv-08135-EJD**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

---

**ROBERT BROWER, SR., et al.,**
*Appellants***,**

vs.

**MUFG UNION BANK, N.A.,**
*Appellee.*

---

On Appeal from the U.S. Bankruptcy Court
Hon. M. Elaine Hammond
Adversary Case No. 17-05044

---

**APPELLEE MUFG UNION BANK, N.A.'S APPENDIX**

**VOLUME 3**
**Pages 458-547**

---

Isaiah Z. Weedn, SBN 229111
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Tel: 714.513.5100
Fax: 714.513.5130
iweedn@sheppardmullin.com

Michael M. Lauter, SBN 246048
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Tel: 415.434.9100
Fax: 415.434.3947
mlauter@sheppardmullin.com

*Attorneys for Appellee*
*MUFG UNION BANK, N.A.*

**INDEX TO APPELLEE'S APPENDIX**

| VOL. NO. | DATE | DOCUMENT | PAGE NOS. |
|---|---|---|---|
| 1 | 2017 10-3 | Order Denying Motion to Dismiss | 4-12 |
| 1 | 2019 7-29 | MUFG Union Bank, N.A.'s Motion for Summary Judgment | 13-36 |
| 1 | 2019 7-29 | Declaration of Isaiah Z. Weedn in Support of MUFG Union Bank, N.A.'s Motion for Summary Judgment | 37-43 |
| 2 | 2019 7-29 | Index of Compiled Exhibits to MUFG Union Bank, N.A.'s Motion for Summary Judgment | 44-457 |
| 3 | 2019 8-12 | Robert Brower, Sr., et al. Opposition to MUFG Union Bank, N.A.'s Motion for Summary Judgment | 458-476 |
| 3 | 2019 8-21 | MUFG Union Bank, N.A.'s Reply in Support of Motion for Summary Judgment | 477-500 |
| 3 | 2019 8-21 | MUFG Union Bank, N.A.'s Evidentiary Objections | 501-526 |
| 3 | 2019 11-20 | Order Granting in Part and Denying in Part MUFG Union Bank, N.A.'s Motion for Summary Judgment | 527-530 |
| 3 | 2019 11-20 | Memorandum Decision on Motions for Summary Judgment | 531-547 |

David W. Balch, Esq. (SBN 226519)
L+G, LLP
318 Cayuga Street
Salinas, CA 93901
Tel: 831.754.2444

Attorneys for Coastal Cypress Corporation, Wilford "Butch" Lindley
Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc.

Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Michael A. Vacchio (SBN 110057
SAMINI COHEN SPANOS LLP
333 S. Hope St., 35th Floor
Los Angeles, CA 900
Tel: 213.863.0080

Attorneys for Anthony Nobles and Richard Babcock

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re Robert Brower, Sr.*<br><br>Debtor. | Case No.: 15-50801 (MEH)<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>Plaintiff,<br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFORD "BUTCH" LINDLEY, an | Adv. Proc. No. 17-05044<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Place: United States Bankruptcy Court<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elaine Hammond<br>Crtrm: 3020 |

| individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>Defendants. | Date: August 26, 2019<br>Time: 11 am<br>Court: 3020 |
|---|---|

Defendants Robert Brower, Sr., Coastal Cypress Corporation (California and Delaware), Wilford "Butch" Lindley, Patricia Brower, Patricia Brower Trust, American Commercial Properties, Inc., Anthony Nobles, and Richard Babcock, hereby oppose the Motion for Summary Judgment brought by Plaintiff Union Bank.

This Opposition is based on the attached Memorandum of Points and Authorities, the Declaration of David W. Balch, the Supplemental Declaration of Robert Brower, and the Declaration of Wilford "Butch" Lindley, filed contemporaneously with this Opposition, with the Declarations from David Balch, Robert Brower, Richard Babcock, and Anthony Nobles, and the exhibits thereto, filed in this matter on July 29, 2019, all other pleadings and papers on file or deemed to be on file in this action, those matters of which this Court may take judicial notice, and upon the oral arguments of counsel made at the hearing on this Motion.

Dated: August 12, 2019

JRG Attorneys at Law

By: //s//
David W. Balch

Attorneys for CCC California, CCC Delaware, Butch Lindley, ACP, Patty Brower, and Patty Brower Trust

Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Dated: August 12, 2019

SAMINI COHEN SPANOS LLP

By: ______________________
Michael Vacchio

Attorneys for Anthony Nobles and Richard Babcock

# TABLE OF CONTENTS

Table of Authorities ..... ii

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 3

A. Butch Lindley ..... 3

B. Nobles / Babcock ..... 4

C. Patricia Brower ..... 6

LEGAL ARGUMENT ..... 7

Point I: Statement of Law Regarding Summary Judgment ..... 7

Point II: Chualar Canyon Ranch Supply, Richard Babcock, Anthony Nobles and Patty Brower Trust Own Shares of Coastal Cypress Corporation ..... 8

A. The Share Certificates are Valid Under Delaware and California Law ..... 8

B. The Share Certificates Are Valid Under California Law Because Money or Services Were Rendered ..... 8

C. Brower, Nobles, Babcock, and Chualar Canyon Ranch Supply are Bona Fide Purchasers of Stock ..... 9

D. The Statute of Limitations Has Long Since Expired ..... 10

Point III: Patty Brower's Shares of Coastal, and Her ACP Property, are Her Separate Property ..... 11

Point IV: The Motion Must Be Denied as to the Third Cause of Action ..... 13

CONCLUSION ..... 13

## Table of Authorities

Cases

*Burge v. Midway Pacific Oil Co.* (1929) 99 Cal.App. 714 .......... 9

*Cortelyou v. Imperial Land Co.* (1909) 156 Cal. 373, 376 .......... 9

*Ellsworth v. National Home & Town Builders* (1917) 33 Cal. App. 1 .......... 9

*Estate of Bibb* (2001) 87 Cal.App.4th 461 .......... 13

*Estate of Petersen* (1994) 28 Cal.App.4th 1742 .......... 12

*Haft v. Dart Group Corp.*, 841 F. Supp. 549 (D. Del. 1993) .......... 8

*High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir.1990) .......... 7

*Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736 .......... 10

*In re Estate of Clark* (1928), 94 Cal. App. 453 .......... 12

*In re Marriage of Bonds* (2000) 24 Cal.4th 1 .......... 11

*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046 .......... 11

*In re Marriage of Valli* (2014) 58 Cal.4th 1396 .......... 12

*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir.1999) .......... 7

*Michaels v. Pacific Soft Water Laundry* (1930) 104 Cal.App. 349 .......... 9

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099 (2000) .......... 7

*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 .......... 11

*Ogden v. Bumble Bee Foods, LLC*, 2014 U.S.Dist.LEXIS (N.D.Cal. Jan. 2, 2014) .......... 7

*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319 .......... 10

*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378 .......... 11

*Shanik v. White Sewing Machine Corp.*, 25 Del. Ch. 371 (Del. 1941) .......... 8

*Somps v. Somps* (1967) 250 Cal. App. 2d 328 .......... 12

*Stegall v. Citadel Broad. Co.*, 350 F.3d 1061 (9th Cir. 2003) .......... 7

*Walters v. Boosinger* (2016) 2 Cal.App.5th 421 .......... 20

<u>Statutes</u>

8 Del. C. § 152 ....................8
California Code of Civil Procedure, § 338a ....................10
California Corporations Code, § 409 ....................8
California Family Code section 1615 ....................11
California Family Code section 852 ....................12
Fed. Bank. Proc. Rule 7056 ....................7
Fed. Civ.Proc. Rule 56(a) ....................7

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Robert Brower, Sr., Coastal Cypress Corporation (California and Delaware), Wilford "Butch" Lindley, Patricia Brower, Patricia Brower Trust, American Commercial Properties, Inc., Anthony Nobles, and Richard Babcock, respectfully submit their Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

A. Shares in Coastal Cypress

Plaintiff contends – without any evidence – that Coastal Cypress Corporation never issued stock to Patty Brower, Wilford "Butch" Lindley, Richard Babcock, and Anthony Nobles, or in the alternative, that if it did issue stock, the issuance was void. Those arguments fail.

1. Babcock and Nobles

Plaintiff has acknowledged that Babcock and Nobles collectively paid $250,000 for their shares in Coastal Cypress Corporation. Nonetheless, Plaintiff contends that because this money was deposited into Mr. Brower's personal bank account, it cannot form consideration for issuance of stock by Coastal. That reasoning is flawed.

Anthony Nobles. Anthony Nobles paid $200,000 for his shares of stock. (Nobles Declaration, at ¶ 2.) Plaintiff concedes that he paid for his stock. The bank records and Coastal's general ledger reflect that (i) $50,000 of this money was re-deposited directly into Coastal's bank account – so Union Bank's argument that none of the Nobles payment went directly to Coastal is flat wrong, and (ii) the remaining $150,000 was loaned from Coastal to Chateau Julien and booked on Coastal's general ledger as an account receivable. Coastal received a tax break when this account receivable was written off in 2015 as "bad debt." As such, Coastal received a benefit from the Nobles payment. Further, this money was listed on Coastal's general ledger as "paid-in capital."

Richard Babcock. Richard Babcock paid $50,000 for his shares -- $10,000 directly from him, and $40,000 from Anthony Nobles. Bank records reflect that $40,000 of this money went

into Coastal. Specifically, in advance of payment for these shares, Bob Brower loaned $40,000 to Coastal. The $40,000 payment for the Nobles shares was provided to Brower, as repayment of that loan. The net effect was that Coastal had direct use of the $40,000. The accounting for the remaining $10,000 is less clear – though all parties agree that the $10,000 was paid, albeit directly to Chateau Julien.

Moreover, even if the stock transfer did not meet all the technicalities of California law, the Defendants are "innocent" parties are entitled to retain their shares. *See Cortelyou v. Imperial Land Co. (*1909) 156 Cal. 373, 376. Finally, Union Bank's lawsuit is barred by the three year statute of limitations.

2. Lindley / Chualar Canyon Ranch Supply

Butch Lindley and Chualar Canyon Ranch Supply ("CCRS") performed services for Coastal and Chateau Julien in the 1980's, which is sufficient consideration for the granting of stock. For example, Mr. Lindley had extensive relationships in the wine industry in the local region and he know of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. Mr. Lindley also had the required connections to have this equipment installed. Coastal Cypress owned much of this equipment, and Mr. Lindley's services were of significant benefit to Coastal. Moreover, Mr. Lindley, as a well known figure in the wine industry, lent instant credibility to Coastal and Chateau Julien.

Further, CCRS is also an "innocent" party and entitled to retain its shares, and Union Bank's lawsuit is time barred.

3. Patty Brower

Mr. and Mrs. Brower entered into a valid prenuptial agreement in 1980. Pursuant to that agreement, each retained their property as separate property. Mrs. Brower was issued her shares in Coastal in the 1980's, in exchange for payment by her of separate-property funds. Union Bank contends that Ms. Brower could not have purchased those shares, because her prenuptial agreement reflects that she only owned $15,000. Union Bank is incorrect. The prenuptial

agreement reflects that Ms. Brower owned $515,000 worth of separate property. (Brower Supplemental Declaration, at ¶ 4.)[1]

Moreover, any lawsuit challenging the validity of those shares is time-barred.

B. ACP

Further, Mr. Brower transferred his entire interest in ACP to Mrs. Brower in 2000. The transaction was a proper transmutation under California Family Code section 850 *et seq.* There is no basis to unwind the transaction from 2000.

## STATEMENT OF FACTS

A. Butch Lindley

Robert Brower, Sr. formed Coastal Cypress Corporation, a California corporation, in 1982. At all times, he has been the President of Coastal Cypress. In 1987, Coastal Cypress issued 355,000 shares to Chualar Canyon Ranch Supply, a company owned by Wilford "Butch" Lindley. Those shares are memorialized in Coastal's stock register. Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services—such as certain portions of the grape crops from his grape-growing operation, and the provision of his services to assist Coastal and Chateau Julien in CJ's efforts to lease land, grow grapes, and produce wine. (Brower July Declaration, at ¶ 2.)

For example, Mr. Lindley had extensive relationships in the wine industry in the local region and he know of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. Mr. Lindley also had the required connections to have this equipment installed. This equipment included processing tanks and other processing equipment. Coastal Cypress owned much of this equipment. Because of Coastal's capacity increase, Coastal could charge higher rents to its two tenants (Chateau Julien (the licensing entity) and Great American Wineries (the winery)). Coastal's ability to charge higher rents, in turn, was due to Mr. Lindley's services on behalf of Coastal, prior to receiving his

[1] Robert Brower has submitted two declarations. His declaration dated July 29, 2019 will be cited as the "Brower July Declaration," and his declaration dated August 12, 2019, will be cited as the "Brower Supplemental Declaration."

shares of stock. (Brower Supplemental Declaration, at ¶¶ 9-10; *see generally* Lindley Declaration, at ¶¶ 3-4.)

Finally, it is critical to note that the Browers moved out to the Central Coast in 1982 from New Jersey. They were newcomers to the area and the wine industry. At that time, Butch Lindley was well known in the agricultural and wine industry in the Central Coast (and beyond), and his affiliation with the global entity, including Coastal Cypress, brought instant credibility to the operations. This all was a significant benefit to Coastal Cypress. (Brower Supplemental Declaration, at ¶ 11.)

B. Nobles / Babcock

In 2011, Anthony Nobles and Richard Babcock were issued a combined 250,000 shares of stock from Coastal Cypress Corporation. Mr. Babcock was issued 50,000 shares and Mr. Nobles was issued 200,000 shares. Mr. Babcock was required to pay $50,000 for his shares. Of that amount, he paid $10,000, and Mr. Nobles paid $40,000 on behalf of Mr. Babcock. Mr. Nobles also paid $200,000 for his own shares. Under the share purchase agreement, the shares were originally going to be preferred shares. At some point in time, those shares were converted into common shares. (Brower July Declaration, at ¶¶ 3-4; Nobles Declaration, at ¶ 2; Babcock Declaration ¶ 2.)

Union Bank now contends that the bank account into which the funds were wired was not the bank account for Coastal Cypress Corporation, but rather the bank account for Robert Brower and Patty Brower individually. That is not correct.

Anthony Nobles. Anthony Nobles paid $200,000 for his shares of stock. Plaintiff concedes that he paid for his stock. The bank records and Coastal's general ledger reflect that (i) $50,000 of this money was re-deposited directly into Coastal's bank account – so Union Bank's argument that none of the Nobles payment went directly to Coastal is flat wrong, and (ii) the remaining $150,000 was loaned from Coastal to Chateau Julien and booked on Coastal's general ledger as an account receivable. Coastal received a tax break when this account

receivable was written off in 2015 as "bad debt." (Brower July Declaration, at ¶¶ 5-7.) As such, Coastal received a benefit from the Nobles payment. Further, this money was listed on Coastal's general ledger as "paid-in capital." *See generally* (Brower Supplemental Declaration, at ¶ 12-13, 16-17.)

The money loaned by Coastal to Chateau Julien was booked by Coastal on its general ledger as paid-in capital. The Coastal-to-Chateau Julien loans were added to Chateau Julien's accounts payable to Coastal, and Chateau Julien made periodic payments on that loan. When Chateau Julien ceased operations in 2015, Coastal took an income tax "bad debt" deduction for the balance of the Chateau Julien AR's. (Brower July Declaration, at ¶¶ 5-7; *see generally* (Brower Supplemental Declaration, at ¶ 12-13, 16-17.)

Richard Babcock. Richard Babcock paid $50,000 for his shares -- $10,000 directly from him, and $40,000 from Anthony Nobles. Bank records reflect that $40,000 of this money went into Coastal. Specifically, in advance of payment for these shares, Bob Brower loaned $40,000 to Coastal. The $40,000 payment for the Nobles shares was provided to Brower, as repayment of that loan. The net effect was that Coastal had direct use of the $40,000. The accounting for the remaining $10,000 is less clear – though all parties agree that the $10,000 was paid, albeit directly to Chateau Julien.

Coastal Cypress' income tax returns and other financial documents were provided annually to Union Bank. As such, Union Bank knew as far back as 2012 that 250,000 additional shares of stock had been issued. Moreover, in an email to Union Bank in 2012, Mr. Brower specifically noted that there were additional shareholders in Coastal. (Brower July Declaration, at ¶¶ 5-7.) *See generally* (Brower Supplemental Declaration, at ¶ 12-13, 14-15.)

Finally, there is no evidence whatsoever that Mr. Nobles or Mr. Babcock understood that a portion of their funds were used outside of Coastal Cypress. They are the quintessential "innocent" investors. (Nobles Declaration, at ¶ 4; Babcock Declaration ¶ 4.)

C. Patricia Brower

In 1982, Patricia Brower was issued 25,000 shares of Coastal stock. In 1984, she was issued an additional 100,000 shares of Coastal stock. The register indicates that this was "paid in capital," and Mr. Brower has testified that these shares were issued in exchange for payment by Ms. Brower of separate-property funds. (Brower July Declaration, at ¶ 9; Brower Supplemental Declaration, at ¶ 8.)

In 2015, Ms. Brower formed the Patricia Brower Trust and placed those shares in the trust. In 2017, when Coastal Cypress California was merged into Coastal Cypress Delaware, the Trust surrendered its shares in Coastal Cypress California and were re-issued shares in Coastal Cypress Delaware. (Brower July Declaration, at ¶ 9.)

Mr. and Mrs. Brower were married since the inception of Coastal Cypress California. They held their shares as separate property, pursuant to a Marital Asset Agreement executed in 1980. (Brower July Declaration, at ¶ 10.)

Mr. Brower formed American Commercial Properties in 1983, using money that he had saved prior to his marriage with Patty Brower. (Brower July Declaration, at ¶ 11; Brower Supplemental Declaration, at ¶ 5.) Under California law and pursuant to the property agreement with Patty Brower, ACP was Mr. Brower's sole and separate property. On November 8, 2000, Mr. Brower transferred my entire interest in ACP to Patty Brower as her sole and separate property, on the occasion of their anniversary. (Brower July Declaration, at ¶ 11.) After the transfer, Mr. Brower retained zero ownership interest. The transfer was memorialized by (i) a transfer of stock certificate, (ii) a notation in the ACP stock register, and (iii) a personal note and card from Mr. Brower to Mrs. Brower on November 8, 2000. (Brower July Declaration, at ¶ 11.)

Finally, Union Bank has known since at least 2012 that Patty Brower was the owner of 100% of ACP stock. (Supplemental Brower Declaration, at ¶ 3.)

In 2015, when Mrs. Brower created the Patricia Brower Trust, she transferred ownership of ACP into the Trust.

## LEGAL ARGUMENT

### Point I: Statement of Law Regarding Summary Judgment

The party moving for summary judgment must persuade the court that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ.Proc. Rule 56(a); Fed. Bank. Proc. Rule 7056. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (2000).

"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102, *citing High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party and "all reasonable inferences that may be drawn from the facts placed before the court must be drawn" in favor of the opposing party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999); *see also Ogden v. Bumble Bee Foods, LLC*, 2014 U.S.Dist.LEXIS 565, at *18-19.) (N.D.Cal. Jan. 2, 2014). The Ninth Circuit "specifically rejected the notion that a court could disregard direct evidence on the ground that no reasonable jury would believe it," because such a rule would contradict the clear instruction that a court may not weigh the evidence or assess its credibility.") *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158

**Point II: Chualar Canyon Ranch Supply, Richard Babcock, Anthony Nobles, and Patty Brower Trust Own Shares of Coastal Cypress Corporation**

Union Bank's motion for summary judgment, insofar as it seeks to have the Coastal shares of Chualar Canyon Ranch Supply, Richard Babcock, Anthony Nobles, and the Patty Brower Trust declared void, must be denied.

A. The Share Certificates are Valid Under Delaware and California Law

Under Delaware law, "the board of directors may authorize capital stock to be issued for consideration consisting of cash, any tangible or intangible property or any benefit to the corporation, or any combination thereof." 8 Del. C. § 152. "In the absence of actual fraud in the transaction, the judgment of the directors as to the value of such consideration shall be conclusive." *Id.* One asserting the defense of lack of consideration bears the burden of proving that defense. *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 1993 U.S. Dist. LEXIS 18846 (D. Del. 1993).

In this case, each defendant surrendered their old shares of Coastal California stock for the new shares of Coastal Delaware stock. This is sufficient consideration. *Shanik v. White Sewing Machine Corp.,* 25 Del. Ch. 371, 19 A.2d 831 (Del. 1941). Further, the services rendered by Butch Lindley, and the money contributed by Anthony Nobles, Richard Babcock, and Patty Brower, ultimately accrued to the benefit of Coastal California (and thus Coastal Delaware by merger). This is all that is required, since consideration can be "any benefit to the corporation." 8 Del. C. § 152.

B. The Share Certificates Are Valid Under California Law Because Money or Services Were Rendered

Under California law, a corporation may issue shares for "money paid; labor done; services actually rendered to the corporation or for its benefit or in its formation or reorganization; debts or securities canceled; and tangible or intangible property actually received either by the issuing corporation or by a wholly owned subsidiary." California Corporations Code, § 409.

In this case, Butch Lindley provided services of benefit to Coastal Cypress California back in the 1980s. This is sufficient to justify issuance of shares. *See Ellsworth v. National Home & Town Builders* (1917) 33 Cal. App. 1, 2 (corporate stock issued in consideration of valuable services rendered and labor performed for corporation is not issued without consideration).

In the 1980's, Patty Brower paid cash consideration for her shares. This is clearly sufficient consideration.

In 2011, Anthony Nobles and Richard Babcock paid $250,000 for their shares. The money were paid into the personal bank account of Robert Brower, but he has testified that (i) $50,000 of the Nobles money went to Coastal, (ii) $150,000 of the Nobles money was loaned to Chateau Julien at the direction of Coastal Cypress, and Coastal ultimately received a tax advantage when it deducted the entirety of the AR's as "bad debt," (iii) $40,000 of the Babcock money went into Coastal, and (iv) $10,000 of the Babcock money was provided directly to Chateau Julien. This is sufficient consideration. *See Burge v. Midway Pacific Oil Co.* (1929) 99 Cal.App. 714, 717 ("if there is some consideration emanating from a legitimate transaction, one not tainted with fraud, and intended to redound to the benefit of the corporation, the constitutional and statutory requirements for the issue of corporate bonds, in so far as the corporation or its stockholders are concerned, are satisfied).

C. Brower, Nobles, Babcock, and Chualar Canyon Ranch Supply are Bona Fide Purchasers of Stock

Even if the Court were to find insufficient consideration – because the money did not initially flow into Coastal – the defendants are still the rightful stockholders. Under longstanding California law, even if stock is issued in a manner inconsistent with Corporations Code section 409, a bona fide (or "innocent") purchaser is still considered a rightful stockholder. *See Cortelyou v. Imperial Land Co. (*1909) 156 Cal. 373, 376; *Michaels v. Pacific Soft Water Laundry* (1930) 104 Cal.App. 349, 358-359. In the present case, it is undisputed that Nobles and Babcock paid $250,000 for their shares in Coastal stock, and Lindley performed services for the benefit of

Coastal. Regardless of whether Coastal complied with Corporations code section 409, that is no reason to deprive innocent purchasers of their shares.

D. <u>The Statute of Limitations Has Long Since Expired</u>

Under California law, the statute of limitations for an action upon a liability created by statute is 3 years. California Code of Civil Procedure, § 338a. One very early case held that, where a property or contractual right was "wholly void," a lawsuit could be brought at any time, regardless of the statute of limitations. *See Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736. That decision was later declared "flatly wrong" by the court in *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326, and subsequent courts have held that the applicable statute of limitations must be imposed in lawsuits seeking to invalidate allegedly void contracts or property interests. *See, e.g., Robertson*, 90 Cal.App.4th at 1326 (quitclaim deed that was allegedly void due to mental incompetence); *see also Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 429-30 (collecting and citing cases).

It is undisputed that the shares were issued by Coastal to Patty Brower in the early 1980s, to Chualar Canyon Ranch Supply in 1987 and to Nobles and Babcock in 2011. Any action to have those shares declared void would have to have been filed by 1990 for Chualar Canyon's shares and 2014 for Nobles and Babcock's shares – well before this lawsuit was filed. As such, this lawsuit is time barred.

Moreover, even if Union Bank was entitled to some form of "delayed discovery," they were certainly on inquiry notice in 2012 that Coastal Cypress had issued new shares and on notice in 2012 that Patty Brower claimed ownership of 100% of ACP. This is sufficient to trigger the running of the statute of limitations:

> Statutes of limitation do not begin to run until a cause of action accrues. . . . An important exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." A potential plaintiff" discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its

> elements, even if he lacks knowledge thereof—when, simply put, he at least "suspects ... that someone has done something wrong" to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding."
>
> The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have "information of circumstances to put them on inquiry."

*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1389-1390; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398. Because Union Bank was on inquiry notice in 2012 that shares were being issued, and Mr. Brower informed him that he was not the sole shareholder, the 3 year statute began running no later than 2012, and this lawsuit must have been filed no later than end of 2015. As such, it is time-barred.

**Point III: Patty Brower's Shares of Coastal, and Her ACP Property, are Her Separate Property**

For the reasons set forth above, any lawsuit against Patty Brower is likewise time-barred, insofar as she received her shares in the 1980s, and her interest in ACP in 2000.

Moreover, the Brower's 1980 premarital agreement, stipulating that all property would be separate property, must be enforced. Courts have routinely noted that "parties contemplating marriage may validly contract as to their property rights, both as to property then owned and as to property and earnings that may be acquired during the marriage. *In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1053. As the *Hill & Dittmer* case noted, "it is evident that the Uniform Premarital Agreement Act was intended to enhance the enforceability of premarital agreements." *Id.* In California, a party challenging the voluntariness of a premarital agreement under Family Code section 1615 bears the burden of proof. *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 24. Because there is no evidence showing that the marital agreement was not entered into voluntarily, it must be applied in this case.

As to ownership of Coastal stock, there is the following evidence: (i) Patty Brower's shares in Coastal are in her name; (ii) the Coastal shares reflect paid-in capital from Ms. Brower;

(iii) Mr. Brower, the President of Coastal, has testified that Ms. Brower paid for her shares using separate property, and (iv) under the prenuptial agreement, the shares are separate property.

Union Bank contends that Ms. Brower ***could not*** have paid for the shares with her separate property, because (i) there is no evidence she had a separate bank account, and (ii) at the start of her marriage, she only had $15,000 of separate property. Both claims are false. First, Ms. Brower provided evidence that she had a personal bank account at Chase Bank. *See* Balch Declaration, dated August 12, 2010 and exhibits thereto; Supplemental Brower Declaration at ¶ 8.) Second, Ms. Brower had $515,000 worth of separate property at the start of the marriage. (Supplemental Brower Declaration at ¶ 4.)

Under California law, if a spouse uses separate property to later purchase additional property, this new property remains separate property. *See, e.g., In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399-1400; *Somps v. Somps* (1967) 250 Cal. App. 2d 328; *In re Estate of Clark* (1928), 94 Cal. App. 453.

As to the ownership of ACP, the Browers fulfilled all statutory requirements to transfer the ACP ownership from Mr. Brower to Mrs. Brower. Pursuant to Family Code section 850, "married persons may by agreement or transfer, with or without consideration," transmute community property to separate property of one spouse, or transmute separate property of one spouse to separate property of the other spouse. Family Code section 852 further provides that "a transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

In this case, the transmutation of ACP shares from Mr. Brower to Mrs. Brower, as her separate property, was evidenced by (i) a gift card that reads "ACP is now yours", (ii) a signed note that includes the statement "I am proud to give you all my interest" in ACP, and (iii) a stock transfer that reflects that Robert Brower was gifting his entire interest to Patty Brower. This is all that is required for an effective transmutation. *See, e.g., Estate of Petersen* (1994) 28 Cal.App.4th 1742 (a transmutation requires language that expressly states the character or ownership of the

spouse's interest is being changed); *Estate of Bibb* (2001) 87 Cal.App.4th 461 (a clear and unambiguous expression of intent to transfer the real property is sufficient).

**Point IV**

**The Motion Must Be Denied as to the Third Cause of Action**

The third cause of action is derivative of the first two causes of action and likewise fails for the reasons set forth above. Moreover, Plaintiff has cited no authority stating that a corporation cannot refinance it shares simply because one of its minority shareholders is in bankruptcy.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that Plaintiff's motion be denied in its entirety.

Dated: August 12, 2019

JRG Attorneys at Law

By: //s//
David W. Balch

Attorneys for CCC California, CCC Delaware, Butch Lindley, ACP, Patty Brower, and Patty Brower Trust

Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Dated: August 12, 2019

SAMINI COHEN SPANOS LLP

By: [signature]
Michael Vacchio

Attorneys for Anthony Nobles and Richard Babcock

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
Four Embarcadero Center 17th Floor
San Francisco, CA 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re

ROBERT BROWER, SR.,

Debtor.

---

MUFG UNION BANK, N.A.,

Plaintiff,

v.

ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,

Defendants.

Case No. 15-50801 MEH
Chapter 11
Adv. Proc. No. 17-05044 MEH

**PLAINTIFF MUFG UNION BANK, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

[*Evidentiary Objections to Declarations and Other Evidence submitted with Defendants' Opposition filed concurrently herewith*]

Hearing Information:
Date: August 26, 2019
Time: 11:00 a.m.
Judge: Hon. M. Elaine Hammond
Place: United States Bankruptcy Court
280 South First Street
Courtroom: 3020
San Jose, CA 95113-3099

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 5

II. THE BANK'S MSJ SHOULD BE GRANTED AS TO THE FIRST CLAIM CONCERNING THE COASTAL SHARES. ........ 6

A. Messrs. Lindley, Babcock, And Nobles Did Not Provide Consideration In Exchange For Their Coastal Shares. ........ 6

1. Mr. Lindley. ........ 7

2. Messrs. Babcock and Nobles. ........ 10

B. No "Bona Fide" or "Innocent" Purchaser Defense Applies to This Case. ........ 12

C. Defendants' Statute of Limitations Defense Has Already Been Rejected. ........ 15

D. Messrs. Babcock, Nobles, and Lindley's Coastal Delaware Shares are Void Because Their Coastal California Shares Were Void. ........ 16

E. There is No Admissible Evidence that Mrs. Brower's Coastal Shares are Traceable to Her Alleged Separate Property. ........ 17

III. THE BANK'S MSJ SHOULD BE GRANTED AS TO THE SECOND CLAIM CONCERNING THE ACP SHARES. ........ 18

A. The Bank Disputes the Admissibility of the Documents Proffered as Evidence of the Supposed Transmutation of ACP Stock. ........ 21

IV. THE BANK'S MSJ SHOULD BE GRANTED AS TO THE THIRD CLAIM. ........ 24

V. CONCLUSION ........ 24

TABLE OF AUTHORITIES

Page(s)

Federal Cases

*In re Blasingame*
598 B.R. 864 (BAP 6th Cir. 2019) .......... 16

*Latis Laser, Inc. v. Ice Cold Stocks, LLC*
No. CV 08-03587-RGK, 2008 WL 11338191 (C.D. Cal. Sept. 23, 2008) .......... 7

*Sana v. Hawaiian Cruises, Ltd.*
181 F.3d 1041 (9th Cir. 1999) .......... 22

*In re SK Foods, LP*
499 B.R. 809 (Bankr. E.D. Cal. 2013) .......... 12

State Cases

*Estate of Bibb*
87 Cal.App.4th 461 (2001) .......... 20, 21

*Burge v. Midway Pacific Oil Co.*
99 Cal.App. 714 (1929) .......... 11

*Marriage of Ciprari*
32 Cal.App.5th 83, 91 (2019) .......... 17

*Clark v. Millsap*
197 Cal. 765 (1926) .......... 7

*Cortelyou v. Imperial Land Co.*
156 Cal. 373 (1909) .......... 7, 12, 13

*Ellsworth v. National Home & Town Builders*
33 Cal. App. 1 (1917) .......... 9

*Kahle v. Stephens*
214 Cal. 89 (1931) .......... 7

*In re Marriage of Holtemann*
166 Cal.App.4th 1166 .......... 20

*In re Marriage of Lund*
174 Cal.App.4th 40 (2009) .......... 20

*In re Marriage of Starkman*
129 Cal. App. 4th 659 (2005) .......... 19

*In re Marriage of Valli*
58 Cal. 4th 1396 (2014) .......... 19, 20

*Mary Pickford Co. v. Bayly Bros, Inc.*
12 Cal.2d 501 (1939).......... 15

*Michaels v. Pacific Soft Water Laundry*
104 Cal.App. 349 (1930).......... 12, 14, 15

*Estate of Petersen*
28 Cal.App4th 1742 (1994) .......... 20, 21

*Shanik v. White Sewing Machine Corp.*
25 Del. Ch. 371 (Del. 1941).......... 17

*Stonehouse Homes LLC v. City of Sierra Madre*
167 Cal.App.4th 531 (2008) .......... 13

Federal: Statutes, Rules, Regulations, Constitutional Provisions

11 U.S.C. § 541(a) .......... 15

11 U.S.C. § 541(a)(1) .......... 15

Fed. R. Evid. 803(6) .......... 22

Fed. Rule of Evid. 100 .......... 22

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Family Code § 852(a).......... 19

Rule of Evidence 1002.......... 22

## I.
## INTRODUCTION

The legal arguments advanced in Defendants' Opposition ("Opposition") to the Bank's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Bank's MSJ") are substantively identical to those advanced in the Defendants' own, affirmative Motion for Summary Judgment ("Defendants' MSJ"). Defendants have made virtually no attempt to refute or distinguish the legal authority cited in the Bank's MSJ. Based on that legal authority and the undisputed facts set forth in the Bank's MSJ the following remains true:

(a) Mr. Lindley's 355,000 Coastal shares should be deemed void for lack of consideration pursuant to the Bank's first claim because the services Mr. Lindley purportedly provided in exchange for the shares were provided to a different corporation controlled by Debtor, Great American Wineries, Inc. ("GAW");

(b) Mr. Nobles' 200,000 Coastal shares and Mr. Babcock's 50,000 Coastal shares should be deemed void for lack of consideration pursuant to the Bank's first claim because the consideration they allegedly paid in exchange for these shares was paid to Debtor and Mrs. Brower's personal account and subsequently transferred to a different corporation controlled by them, Chateau Julien, Inc. ("CJ"), or simply paid directly to CJ. In other words, none of the money paid by Mr. Nobles or Mr. Babcock was paid to Coastal or even subsequently found its way to Coastal;

(c) The Patricia Brower Trust's 125,000 Coastal shares should, pursuant to the Bank's first claim, either (1) be deemed void for lack of consideration because there is no evidence Coastal received consideration in exchange for the shares or (2) be deemed community property and therefore property of Debtor's bankruptcy estate because there is no evidence that any consideration traceable to Mrs. Brower's separate property was actually received by Coastal in exchange for the shares;

(d) Pursuant to the Bank's second claim, 100% of ACP's shares should be deemed property of Debtor's bankruptcy estate (either as Debtor and Mrs. Brower's community property or as Debtor's sole and separate property) because the alleged November 2000 transfer of the ACP stock from Debtor to Mrs. Brower did not change the character of the stock or eliminate Debtor's ownership interest therein; and

(e) Pursuant to the Bank's third claim and provided that sufficient Coastal shares are voided or reclassified as Debtor and Mrs. Brower's community property to bring Debtor's ownership interest in Coastal to more than 50%, the post-petition merger transaction whereby Coastal became a Delaware corporation should be avoided pursuant to 11 U.S.C. § 549.

As already detailed in the Bank's Opposition to Defendants' MSJ (and as the Bank shall reiterate again below), none of the legal authority cited in Defendants' Opposition suggests that the Court should reach a different conclusion on any of these items. Instead, Defendants have offered up freshly minted "evidence" consisting of sham declarations and newly-fashioned documents that they attempt to pass off as pseudo-business records in an effort to manufacture purported disputed issues of material fact. This "evidence" is largely inadmissible and, even if it were not, is insufficient to create a disputed issue of fact sufficient to defeat any portion of the Bank's MSJ.

The Court should not countenance Defendants' cynical attempt to drag this case out and further delay the reckoning they have earned. The undisputed facts firmly establish that the Bank is entitled to summary judgment on each and every one of its claims. Accordingly, the Bank's MSJ should be granted in its entirety.

## II.
## THE BANK'S MSJ SHOULD BE GRANTED AS TO THE FIRST CLAIM CONCERNING THE COASTAL SHARES.

### A. Messrs. Lindley, Babcock, And Nobles Did Not Provide Consideration In Exchange For Their Coastal Shares.

There is no admissible evidence that Messrs. Lindley, Babcock, or Nobles ever gave **Coastal** consideration in exchange for their shares. As set forth in the Bank's MSJ, shares

issued by a corporation without having received consideration "**are void**, and the parties receiving them do not thereby become shareholders." *Cortelyou v. Imperial Land Co.*, 156 Cal. 373, 376 (1909) (emphasis added) (citation omitted); *Latis Laser, Inc. v. Ice Cold Stocks, LLC*, No. CV 08-03587-RGK (Cwx), 2008 WL 11338191, at *2 (C.D. Cal. Sept. 23, 2008) (quoting *Cortelyou*); *see also Kahle v. Stephens*, 214 Cal. 89, 92 (1931) ("[T]the stock originally issued to them as above described was void because…it was issued without consideration."); *Clark v. Millsap*, 197 Cal. 765, 779 (1926) ("[S]hares of stock issued in violation of [the prohibition on issuing stock without consideration] are void and the parties receiving them do not thereby become shareholders."). Defendants do not offer any contra authority but instead argue that Messrs. Lindley, Babcock, and Nobles *did* provide consideration for their shares. But the evidence offered in support of their contentions either does not support their argument or is entirely inadmissible.

**1. Mr. Lindley.**

Defendants contend that Mr. Lindley's stock was validly issued because he "provided services of benefit to Coastal Cypress California back in the 1980s." (Opposition, 9:1-2 and 3:15-18 ("Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services – such as certain portions of the grape crops from his grape-growing operation, and the provision of his services to assist Coastal and Chateau Julien ***in CJ's efforts*** to lease land, grow grapes, and produce wine." emphasis added).) As previously determined by the Court, the three companies Debtor ran that comprised the "Chateau Julien Wine Estate" enterprise, were Coastal, CJ, and GAW. Coastal merely owned the land on which the Chateau Julien Wine Estate was located; it did not make or sell wine. (*See* Weedn Decl., ¶ 10; Exh. 9, Court's March 22, 2017 Memorandum Decision, p. 2:7-19 (Doc No. 47 in *MUFG Union Bank, N.A. v. Brower* (Adv. No. 15-05119).) Accordingly, none of the goods and services Mr. Lindley supposedly provided in exchange for his Coastal shares were actually provided to Coastal.

Defendants submit Supplemental Declarations from Debtor and Mr. Lindley in conjunction with their Opposition. Therein they claim, for the first time, that Mr. Lindley

also helped (in some unspecified way) Coastal to purchase certain equipment and that his credibility in the local wine industry helped legitimize Debtor's global, wine estate enterprise. (*See* Supp. Brower Decl., ¶¶ 9-11 and Exh. C thereto; Supp. Lindley Decl., ¶ 3.) As a preliminary matter, Debtor and Mr. Lindley's statements in these supplemental declarations should be barred as "sham affidavits" that "flatly contradict" prior discovery testimony and "provided for the sole purpose of creating a genuine issue of material fact." *Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534, 535 (9th Cir. 2012) (holding district court did not abuse its discretion in finding a declaration submitted by a borrower in response to a credit union's motion for summary judgment was a sham affidavit as it contradicted earlier deposition testimony and declarant "made no attempt to explain his prior deposition testimony, nor did he claim he was confused during his deposition"); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit"); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 942 (N.D. Cal. 2016) ("the sham affidavit rule permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy)"); *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1144 (S.D. Cal. 2006) (disregarding plaintiffs' submitted declarations in opposition to motion for summary judgment which contradicted prior deposition testimony and discovery responses as "A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.")

As detailed above (and as Defendants' MSJ confirms – *see* Defendants' MSJ, 3:5-12 and 7:4-5), the Defendants never previously suggested that Mr. Lindley's unspecified assistance in acquiring equipment or his professional credibility served as consideration for his Coastal shares. Moreover, the only evidence beyond Debtor and Mr. Lindley's sham declarations to support these contentions is a marked-up document of unspecified origin that includes Debtor's (apparently recent) handwritten notes about which equipment supposedly belonged to which of his cadre of companies. (Exh. C to Supp. Brower Decl.) Among other things, the document is inadmissible hearsay not subject to any applicable exception. *Pos–*

*A–Traction, Inc. v. Kelly–Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000) ("all documentary evidence, including contracts [] must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule.") To his credit, Mr. Lindley admits in his supplemental declaration that "I am without sufficient information to verify Mr. Brower's representation [that the equipment identified in Exhibit C was actually owned by Coastal]." (Supp. Lindley Decl., p. 2:11-14.) Debtor, despite his established penchant for false representations (*see* Bank's Exh. 9, Court's March 22, 2017 Memorandum Decision, 4:24 – "Brower's financial statements establish a pattern of misrepresentations."), seems to believe his freshly minted representations regarding equipment supposedly owned by Coastal should be taken on faith. That is not how the rules of evidence work.

Even if there were admissible evidence to support Defendants' new assertions that Mr. Lindley referred Debtor to businesses with equipment available for purchase and lent his credibility to Debtor's operation, Defendants have not cited any legal authority that actually supports their assertion that these vaguely-described, amorphous activities constituted sufficient consideration for Coastal shares. Defendants cite *Ellsworth v. National Home & Town Builders*, 33 Cal. App. 1 (1917) for the proposition that "corporate stock issued in consideration of valuable services rendered and labor performed for corporation is not issued without consideration." (Opposition, 9:2-4.) But that is not the scenario under which Mr. Lindley's alleged Coastal shares were purportedly issued. Rather, Mr. Lindley purportedly received shares for providing goods and services **to CJ and/or GAW**, not Coastal. Indeed, Mr. Lindley admitted in deposition (and reaffirms in his supplemental declaration) that he could not distinguish between Debtor's various entities and he had no idea what particular entity to which he was providing services. (*See* Exh. 10, Lindley Depo., pp. 30:24-32:4 ("In my mind [Coastal, CJ, and GAW] were -- were all one entity, if you will…"[t]he whole operation [i.e., Coastal, CJ, and GAW] to most people, including me, was thought of because of the name of the building was Chateau Julien."); Supp. Lindley Decl., 2:16-18 ("when I came across equipment that I thought Mr. Brower could use at one of the combined entities, I

passed along the referral.") Here again (as with the purported consideration Messrs. Babcock and Nobles paid **to Debtor and/or CJ** for their **Coastal** stock), Defendants are seeking to benefit from their complete and total disregard for Coastal's separate entity status. The Court must not allow that to pass. *See In re SK Foods, LP*, 499 B.R. 809, 840 (Bankr. E.D. Cal. 2013) (*quoting Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985)) ("[T]he separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.") and 841 (*quoting Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal.App.3d 1220, 1249 (1991)) ("[I]t would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity.")

**2. Messrs. Babcock and Nobles.**

Like Mr. Lindley, Messrs. Babcock and Nobles never provided any consideration to Coastal for their shares. Defendants once again contradict themselves from their own affirmative MSJ – where they represented that "[t]he [funds[1]] were paid into the personal bank account of Robert Brower"[2] and then transferred to CJ as a purported "loan" from Coastal that was never paid back – to their Opposition – where they change their story and, without citing **any** evidence and contrary to authenticated bank records, state that "$40,000 of the Babcock money went into Coastal." (Opposition, 9:7-12.) This reversal is nothing short of bewildering and, as noted, unsupported by any admissible evidence. The fact remains that Coastal never received **any** of the money Messrs. Babcock and Nobles purportedly paid in exchange for Coastal stock. Accordingly, the Coastal shares purportedly issued to Messrs. Babcock and Nobles are void.

[1] Defendants appear to have mistakenly used the term "shares" instead of "funds" in their brief.

[2] In point of fact, $240,000 was paid into the joint, personal bank account of Debtor and Mrs. Brower and $10,000 was paid directly into CJ's bank account. (*See* Bank Exh. 19-22.)

Defendants cite *Burge v. Midway Pacific Oil Co.*, 99 Cal.App. 714 (1929) in support of their argument that Messrs. Babcock and Nobles' Coastal shares are valid because "Coastal ultimately received a tax advantage when it deducted the entirety of the AR's as 'bad debt.'" (*See* Opposition, 9:12-13.) But *Burge* is inapposite.

In *Burge*, the plaintiff, purporting to be the owner of an oil property, entered into an agreement to sell the property to an individual who subsequently assigned all of his rights under the agreement to the defendant corporation. *Burge*, 99 Cal.App. at 714-15. The corporation subsequently issued to the plaintiff a total of 20,000 shares of stock in exchange for (a) an extension "of the time for [the corporation's] payment of moneys which had then become due under the [purchase/sale] agreement"; and (b) conversion of the unpaid balance due into a mortgage on the subject property, "to become due at a date several years later." *Id*. at 715. The corporation subsequently issued to plaintiff an additional 20,000 shares in exchange for "a further extension of the due date upon said mortgage." *Id*. Nearly ten years after the original agreement and after the corporation had taken possession of the oil property, the court in a separate action in U.S. District Court determined that plaintiff never actually had an interest in the subject oil property. *Id*. Accordingly, the corporation argued that the shares it had issued to the plaintiff were void for lack of consideration. *Id*. However, as the court noted, "[b]y means of plaintiff's conveyance defendant [corporation] ***obtained actual possession of the land***, and thus was enabled to take from the land large quantities of oil." *Id*. at 716. Accordingly, the appellate court determined that there was sufficient evidence for the trial court to find that the corporation had, in fact, received consideration for the shares issued to the plaintiff. *Id*.

Unlike the corporate defendant in *Burge* who "obtained actual possession of the land [it was able to purchase in consideration of the shares issued to the plaintiff], and thus was enabled to take from the land large quantities of oil," here Coastal never – not for a second – received the $250,000 purportedly paid by Messrs. Babcock and Nobles for Coastal shares. Instead, the funds were transferred from Messrs. Babcock and Nobles directly to Debtor and Mrs. Brower's joint, personal account and then funneled to CJ or, in Mr. Babcock's case,

transferred directly into CJ's account. Though Defendants now characterize Debtor's financial machinations as a loan from Coastal to CJ, there is no admissible evidence of a loan, much less a formal loan agreement, corresponding corporate resolutions/authorizations, or other indicia that there was a genuine, arm's-length transaction between Coastal and CJ. Debtor simply did what he has always done – moved money between himself and his various entities with impunity.

Throughout Debtor's bankruptcy proceedings – the main action and the adversary proceedings – Debtor (and, in this adversary proceeding, the other Defendants) have asserted the alleged separate corporate status of Coastal, CJ, and GAW to shield assets that are, in fact, owned and controlled by Debtor. Now that separate corporate status is inconvenient because the undisputed facts show that Messrs. Lindley, Babcock, and Nobles provided the purported consideration for their alleged Coastal shares to Debtor himself, CJ, and/or GAW. Accordingly, Defendants now attempt ignore the entities' separate corporate status and seek a ruling that consideration provided to Debtor, CJ, and/or GAW is the same as consideration provided to Coastal for purposes of evaluating the validity of the Coastal share issuances to Messrs. Lindley, Babcock, and Nobles. This is a cynical ploy that should not be countenanced by the Court. *See In re SK Foods, LP*, *supra* 499 B.R. at 840-84. The Coastal shares issued to Messrs. Lindley, Babcock, and Nobles are void for lack of consideration given to Coastal.

**B. <u>No "Bona Fide" or "Innocent" Purchaser Defense Applies to This Case.</u>**

Messrs. Lindley, Babcock, and Nobles argue that, in spite of the fact that they did not actually provide any consideration to Coastal, their shares should not be deemed void because they were "bona fide" or "innocent" purchasers. (Opposition, 9:19-10:2.) However, neither of the cases cited by the Defendants – *Cortelyou v. Imperial Land Co.*, 156 Cal. 373 (1909) and *Michaels v. Pacific Soft Water Laundry*, 104 Cal.App. 349 (1930) – actually support this argument. Unlike this case, in both *Cortelyou* and *Michaels* the stockholders actually paid (or, as *Cortelyou* was an appeal from a demurrer, allegedly paid) consideration for their stock to the entity/person from whom they were purchasing it.

As noted above, *Cortelyou* is of limited significance to Defendants' "bona fide/innocent" purchasers defense due in part to its procedural posture; the case was on appeal from a demurrer ruling where, in all but limited circumstances, all material allegations made in the complaint are assumed to be true. 156 Cal. at 374; *and see Stonehouse Homes LLC v. City of Sierra Madre*, 167 Cal.App.4th 531, 538 (2008) ("We treat the demurrer as admitting all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact.") Accordingly, there had not been scrutiny of any evidence concerning the *Cortelyou* plaintiff's assertion that he paid consideration in exchange for his corporate shares; the allegation was simply deemed true for purposes of the demurrer analysis.

Moreover, *Cortelyou*'s facts are readily distinguishable from this case. In *Cortelyou*, the plaintiff alleged he purchased from the defendant corporation, through its general manger, certain stock for which he paid an agreed price. *Id*. at 374-75. Unlike this case, to whom payment for the stock was made was apparently not an issue in *Cortelyou*. However, at the time of the transaction, the defendant corporation had already issued all of its shares to its general manager and, in light of this fact, there was a dispute concerning the plaintiff's rights to the stock. *Id*. at 375. Noting that the complaint was "not happily worded," the *Cortelyou* court discussed how to interpret the complaint – whether to "[t]reat[] the complaint as averring that certain of the stock…was issued by the corporation to [its general manager] without consideration" or to "construe the complaint as alleging that the issue to [the general manager] was valid." *Cortelyou*, 156 Cal. at 376. Ultimately, the court determined that "the facts set out are sufficient to show Cortelyou's acquisition of the personal property by the purchase, and whether [the general manager] sold the same as his own, or as part of the treasury stock of the corporation, by the sale his interest in the shares, the subject of the sale, vested in Cortelyou. *Id*. at 377.

Unlike *Cortelyou*, in this case there are no alternative narratives that lead to the same result. Defendants do not allege that Messrs. Lindley, Babcock, or Nobles were purchasing Coastal stock that belonged to Debtor and therefore delivered their consideration directly to

Debtor or, at his direction, one of Debtor's other companies. Rather, Defendants allege Coastal issued them stock directly. But the undisputed facts show that the Defendants never gave consideration ***to Coastal*** for that stock. *Cortelyou* simply does not apply to this case.

*Michaels* is similarly unavailing. *Michaels* was "an action to cancel a contract for the sale of corporate stock upon the ground that the sale violated the conditions contained in the permit [issued by] the commissioner of corporations. 104 Cal.App. at 361-62. Pursuant to a petition by three directors of the defendant corporation, the commissioner of corporations issued a permit for the corporation to "issue 30,000 additional shares from the treasury in order to liquidate outstanding indebtedness of the corporation… upon the condition that the stock should first be offered to existing stockholders in proportion to the stock then held by them." *Id*. at 353. Certain of the authorized shares were subsequently sold to two individuals (21,500 shares were purchased by defendant Thompson) and the funds paid to the corporation were used to pay off an outstanding corporate debt. *Id*. at 354. After the fact, one of the pre-existing shareholders filed suit, alleging that he had not been given an opportunity to purchase "his proportion of the stock from the corporation in accordance with the terms of the permit." *Id*. at 355.

"Basing its judgment upon the finding that the three defendant directors were guilty of fraud in making the sale to Thompson, the trial court declared that all the shares of stock held by Thompson should be void, ordered the certificate to be canceled, and thus returned to the treasury of the corporation all these shares without affording Thompson any relief against the corporation." *Id*. at 357. The Court of Appeal reversed, noting, among other things, that "the undisputed evidence is that the president of the corporation, acting under what he deemed to be the authorization of the directors of the corporation, negotiated the sale of the stock to Thompson; that he reported the transaction to the full board of directors; ***that the money was thereafter received and placed in the treasury of the corporation*** without objection or remonstrance on the part of any member of the board; ***that it was thereafter used for the liquidation of an outstanding indebtedness of the corporation*** with the

knowledge and consent of the full board of directors; that the money so received was still retained by the corporation at the time of the trial." *Id*. (emphasis added).

The fundamental difference between *Michaels* and this case is fairly obvious – the corporation in *Michaels* actually received the funds paid for the shares in question (and used them to pay off a corporate debt) whereas Coastal did not. Nothing in *Michaels* stands for the proposition that a "bona fide/innocent" purchaser defense can be asserted in the face of a total lack of consideration; where the purported stockholders' consideration for their shares was never delivered to the issuing corporation. To the extent Messrs. Lindley, Babcock, and/or Nobles believe they were misled by Debtor in connection with the issuance of Coastal shares, they might have a claim against Debtor and/or Coastal. *See id*. at 358 ("When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid. Certificates of stock so issued by a corporation, but which were irregular or void for reasons not participated in by the stockholder, have been held to amount to a misrepresentation and fraud upon the part of the corporation officials for which the corporation is answerable.") (overruled in part by *Mary Pickford Co. v. Bayly Bros, Inc.*, 12 Cal.2d 501 (1939)). But that does not change the fact that Coastal never received any consideration from Messrs. Lindley, Babcock, and/or Nobles in exchange for Coastal stock. Messrs. Lindley, Babcock, and Nobles' Coastal stock is void.

**C. <u>Defendants' Statute of Limitations Defense Has Already Been Rejected.</u>**

The Court rejected Defendants' statute of limitations defense at the pleading stage. (*See* October 3, 2017 Order Denying Motions to Dismiss (Doc. 36), 7:1-17.) The same result should follow here.

11 U.S.C. § 541(a) states that "[t]he commencement of a case ... creates an estate," the bankruptcy estate. That bankruptcy "estate is comprised of all ... property, wherever located and by whomever held," including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). **<u>There is no limitation</u>** upon

the time within which a bankruptcy court may make a determination that certain property belongs to the bankruptcy estate. *In re Blasingame*, 598 B.R. 864, 875 (BAP 6th Cir. 2019).

*Blasingame* is instructive. In that case, the plaintiff in an adversary action "sought a declaratory judgment that personal property located at, in, and around the home where the Debtors reside is property of the bankruptcy estate" whereas "[t]he Debtors assert, as they have throughout the entire bankruptcy proceeding, that the personal property is held in trust or belongs to other people, such as their children, and is not property of the bankruptcy estate." *Id*. at 869. Citing state law creating "a rebuttable presumption of ownership which becomes conclusive after five years," the debtors argued that the plaintiff's adversary action was time-barred. *Id*. 875. The bankruptcy court rejected this argument and the Court of Appeal affirmed, stating as follows: "The [adversary action] sought a determination that the personal property in, at, and around the Debtors' residence belonged to the bankruptcy estate. There is no limitation upon the time within which the Court may do this." *Id*.

As in *Blasingame*, here the Bank seeks a declaratory judgment that certain property (specifically, Coastal and ACP stock) is property of Debtor's bankruptcy estate while the Defendants contend the stock is owned by Mrs. Brower (as her separate property) and Messrs. Lindley, Babcock, and Nobles. Defendants' statute of limitations defense amounts to a contention that property belonging to the Debtor held in the name of these individuals is exempt from inclusion in Debtor's bankruptcy estate if the individuals have held the subject property in their own name for more than three years. As detailed above, that is not the law. Under *Blasingame*, it does not matter how long a third party has supposedly held property of the bankruptcy estate in its own name; the date on which the third party supposedly acquired the property has no bearing on the Court's ability to determine whether that property belongs to the estate. Defendants' statute of limitations defense should be roundly rejected.

**D. <u>Messrs. Babcock, Nobles, and Lindley's Coastal Delaware Shares are Void Because Their Coastal California Shares Were Void.</u>**

Defendants allege that they "surrendered their old shares of Coastal California stock for their new shares of Coastal Delaware stock" and that "[t]his is sufficient consideration

[for the Coastal Delaware stock].” (Opposition, 8:14-15.) However, as detailed in the preceding sections, the defendants’ Coastal California shares are void and were likewise void at the time of the Coastal California/Coastal Delaware stock exchange. Accordingly, Messrs. Lindley, Babcock, and Nobles’ Coastal Delaware stock is likewise void for lack of consideration.

Defendants have not cited any legal authority for the proposition that void stock is sufficient consideration for new stock. The single case cited for Defendants’ apparent contention that void Coastal California stock was sufficient consideration for Coastal Delaware stock, *Shanik v. White Sewing Machine Corp.*, 25 Del. Ch. 371 (Del. 1941), contains no such holding as the stock exchanged in that case was not alleged to be void. *See id*. at 383-84. Messrs. Lindley, Babcock, and Nobles’ Coastal Delaware stock is void because the Coastal California stock they gave in consideration for the Coastal Delaware stock was void.

**E. There is No Admissible Evidence that Mrs. Brower’s Coastal Shares are Traceable to Her Alleged Separate Property.**

Except as otherwise provided by statute, community property is all property acquired by a married person during marriage while domiciled in California. Cal. Fam. C. § 760. Though not expressly codified as such, this principle has always been treated as a “general” community property “presumption.” *See* Cal. Fam. C. § 802 (referring to the “presumption that property acquired during marriage is community property …”). Cal. Fam. C. § 760 is applied as a rebuttable presumption affecting the burden of proof. *See Marriage of Ciprari*, 32 Cal.App.5th 83, 91 (2019). Hence, once an asset is shown to have been acquired by either spouse during marriage (other than by gift or inheritance), it will be treated as community property unless proved otherwise. **The party contesting community property status bears the rebuttal burden**. *Id*.

In this case, the Coastal shares Mrs. Brower supposedly owned as her separate property were indisputably acquired during her marriage to Debtor, but Defendants have not proffered (and cannot proffer) admissible evidence sufficient to overcome their burden of

proving that Mrs. Brower's Coastal shares are traceable to a separate property source. The shares were purportedly issued to Mrs. Brower in exchange for payment of $25,000, but there are no records showing the source of that alleged payment (or even confirming that the payment was made). That is not surprising since there is no evidence that Mrs. Brower ever maintained any assets separate from Debtor until after Debtor filed for bankruptcy. Accordingly, Mrs. Brower's Coastal shares are property of Debtor's bankruptcy estate.

Defendants attempt to manufacture a disputed issue of material fact concerning the source of funds purportedly used by Mrs. Brower to acquire her Coastal shares by blatantly violating the Court's February 6, 2019 Order which states that Mrs. Brower is "precluded from offering any testimony at trial, directly or indirectly through discovery responses or by an expert's reliance upon her testimony; and any declaration filed by her in this adversary proceeding shall be stricken from the record." (Docket No. 104.) Defendants' improperly attempt to circumvent this order by introducing Mrs. Brower's discovery responses through the declarations of Debtor and Mr. Balch. (*See e.g.*, Supp. Brower Decl., ¶ 4 ("Ms. Brower used these monies, which were her separate funds, to purchase her shares in Coastal Cypress"); Balch Decl., ¶ 2 ("In response to the first set of interrogatories, Ms. Brower testified that she had a separate account at Chase Bank until 2015.) That is not acceptable and there is no admissible evidence to support Defendants' contention that Mrs. Brower used her separate property to acquire her Coastal shares (or that she paid anything at all for those shares).

**III.**
**THE BANK'S MSJ SHOULD BE GRANTED AS TO THE SECOND CLAIM CONCERNING THE ACP SHARES.**

Defendants contend that Debtor owned 100% of ACP until November 8, 2000, when he supposedly gifted all of his ACP stock to Mrs. Brower and purportedly transmuted it into her sole and separate property. (Defendants' MSJ, 4:17-24.) "A transmutation of property, however, is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.

To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." *In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) (internal citations omitted); *see also* Cal. Family Code § 852(a). "[I]n adopting the statutory transmutation requirements the Legislature intended 'to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable.'" *Id*. at 1401 (*quoting Estate of MacDonald*, 51 Cal. 3d 262, 269 (1990); *citing In re Marriage of Benson*, 36 Cal. 4th 1096, 1106 (2005) (the transmutation statute "blocks efforts to transmute marital property based on evidence – oral, behavioral, or documentary – that is easily manipulated and unreliable.")).[3]

As detailed in the Bank's MSJ, the undisputed facts auger in favor of a finding that all of the ACP shares are the property of Debtor's bankruptcy estate because the key documents supposedly evidencing the transmutation are inadmissible and/or not sufficient to evidence the supposed transmutation. And even if the documents were admissible, they do not contain a sufficient "express declaration" to support the existence of a transmutation. Accordingly, the Bank's MSJ should be granted as to the second claim.

Defendants contend that "the transmutation of ACP shares from Mr. Brower to Mrs. Brower, as her separate property, was evidenced by (i) a gift card that reads 'ACP is now yours', (ii) a signed note that includes the statement 'I am proud to give you all my interest' in ACP, and (iii) a stock transfer that reflects that Robert Brower was gifting his entire interest to Patty Brower." (Opposition, 12:22-25.) Momentarily setting aside the issues of authenticity and admissibility concerning these documents, none of the proffered documents contain an "express declaration" sufficient to support the existence of a transmutation of the ACP shares from Debtor's separate property into Mrs. Brower's separate property.

---

[3] Written instruments purporting to transmute property must be analyzed independently and without resort to extrinsic evidence. *In re Marriage of Starkman*, 129 Cal. App. 4th 659, 664 (2005). Accordingly, the Court should disregard Debtor's assertions concerning the documents proffered as evidence of the transmutation. (*See e.g.*, Brower Decl., ¶ 11.)

"To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." *In re Marriage of Valli*, 58 Cal. 4th at 1400. The only language cited by the Defendants as a purported "express declaration" are "ACP is now yours" and "I am proud to give you all my interest in that company to do with as you choose" on the first and second pages, respectively, of their Exhibit P. But this language is insufficient to satisfy the "express declaration" requirement as it does not acknowledge the purported status of the shares as Debtor's separate property nor does it expressly state that status is being changed such that the shares will now constitute Mrs. Brower's separate property. *See e.g.*, *In re Marriage of Holtemann*, 166 Cal.App.4th 1166, 1172 ("express declaration" of property transmutation found to exist where transmutation agreement and trust stated that separate property was "hereby transmuted from his separate property to the community property of both parties"); *In re Marriage of Lund*, 174 Cal.App.4th 40, 51-52 (2009) ("express declaration" of property transmutation found to exist where agreement stated, among other things, "[a]ll of the property, real and personal, held in the name of Husband having its origin in his separate property no matter how received and/or earned, is hereby converted to community property of Husband and Wife, and shall thereafter be the community property of the parties for estate planning hereto, each having a present, existing, and equal interest therein.")

Defendants have cited two cases in support of their contention that the aforementioned phrases constitute sufficient "express declarations" to support a transmutation – *Estate of Petersen*, 28 Cal.App4th 1742 (1994) and *Estate of Bibb*, 87 Cal.App.4th 461 (2001). (Defendants' MSJ, 10:8-10.)[4] But neither case actually supports Defendants' argument.

In fact, *Estate of Bibb* actually supports the Bank's argument that the documentation proferred by the Defendants is insufficient to support a transmutation as a matter of law. In

[4] It is relevant to note that Defendants have not provided pin cites, much less any meaningful analysis, from which the Bank and the Court might ascertain the specific aspects these cases that the Defendants are relying on to support their argument.

that case, a grant deed signed by a husband transferring his separate property interest in real property to himself and wife as joint tenants satisfied "express declaration" requirement for valid transmutation of property because the deed was drafted in statutory form required for expressing intent to transfer real property interest and the husband used the term "grant" to convey property into joint tenancy, which is the historically operative term for transferring a real property interest. *Estate of Bibb*, 87 Cal.App.4th at 468-69. No such formalities or legally operative language are present in this case, where the Defendants are relying on a hodge-podge of documents of dubious origin in an attempt to patch together a valid transmutation.

As to *Estate of Petersen*, that case turned on the court's analysis of the following: (a) "whether certain real property had been transmuted by a grant deed reflecting transfer of real estate to a husband and wife as "joint tenants" (*id.* at 1746-47); (b) whether certain annuity contracts "were sufficient to establish a nonprobate transfer by right of survivorship (at 1749); and (c) whether "the reference to joint tenancy on the [money market] account statement" satisfied the requirement of an express written declaration to alter the character or ownership of community funds (at 1754-55). The documentation and attendant language in *Estate of Petersen* is simply not comparable to this case and does not auger in favor of a ruling that the spare, questioned documentation in this case is sufficient to support a transmutation.

Contrary to Defendants' contentions, Debtor's 100% ownership of ACP was never validly transmuted into Mrs. Brower's separate property. Accordingly, as a matter of law, it is the property of Debtor's bankruptcy estate.

## A. The Bank Disputes the Admissibility of the Documents Proffered as Evidence of the Supposed Transmutation of ACP Stock.

The two key documents cited in support of Defendants' transmutation argument are attached as Exhibit P to Debtor's declaration. As the Court may recall, the circumstances surrounding the production of these documents was quite suspicious as it came only after this adversary action was filed and approximately 2 ½ years after Debtor represented he had produced all such documents. (*See* Exh. 2, ¶¶ 3-9 and exhibits 1-5 attached thereto.) The Bank demanded that Defendants produce originals of the various "newly discovered"

documents, which included both of the documents Defendants now proffer as their Exhibit P. The Defendants were purportedly unable to locate the original of the second page of Exhibit P (Exh. 27, 1:22, noting Defendants' inability to locate the document bates stamped ACP/Patty Brower 0033), but produced the original of the first page – the "ACP is now yours" note – along with various alleged corporate meeting minutes and the like for ACP (*id*. at 1:15-20).

The originals produced by the Defendants were subsequently analyzed by Dr. Valery Aginsky, a forensic chemist specializing in the field of ink analysis and document dating, who found strong indications that the documents were illegitimate. (*See* Exh. 28, pp. 3-5 – "SUMMARY OF FINDINGS".) Of particular relevance to the parties' respective MSJs is Dr. Aginsky's determination that the the date and the phrase "ACP is now yours" on the first page of Defendants' Exhibit P were written in a different blue ballpoint pen ink than the rest of the card, which read "Dearest Patty Love forever ^B^". (*Id*. at p. 3-4, ¶ 7.) Dr. Aginsky noted "[t]his evidence is strongly indicative that the entries "11/8/00" and "ACP is now yours" were not written contemporaneously with the initial text, and instead these entries were added to the card some time after the initial text had been written." (*Id*.)

Courts are rightfully wary when parties create self-serving documents and seek to offer them as business records." *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999); *and see* Advisory Committee Note to the 2014 Amendment of Fed. R. Evid. 803(6) (The Committee emphasizes that the opponent is "not necessarily required to introduce affirmative evidence of untrustworthiness," instead the opponent can simply highlight the "circumstances" that suggest untrustworthiness.) The Court simply cannot grant summary judgment in Defendants favor on the Bank's second claim based on the documents comprising Exhibit P.

First, the second page of Exhibit P is inadmissible due to Defendants' inability to produce the original. Rule of Evidence 1002 provides that "[a]n original writing…is required in order to prove its content unless these rules or a federal statute provide otherwise." A duplicate cannot be admitted in lieu of an original when "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. Rule

of Evid. 100; *and see* Notes of Committee on the Judiciary, House Report No. 93–650 ("The Committee approved this Rule in the form submitted by the Court, with the expectation that the courts would be liberal in deciding that a 'genuine question is raised as to the authenticity of the original.'")

And as to the first page of Exhibit P – the "ACP is now yours" note – it is inadmissible as well because it is hearsay not subject to any applicable exception. *Pos–A–Traction, Inc.*, 112 F. Supp. 2d at 1182. Defendants appear to contend that this note is a pseudo-business record, but they have not provided any evidence to support that contention. To authenticate copies of business records an affidavit from the custodian of records must identify that "the record was made at or near the time by—or from information transmitted by—someone with knowledge; [] the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling … making the record was a regular practice of that activity … all these conditions are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6). As Mr. Brower admits in his declaration, he was not the custodian of records for ACP and the disputed documents were not maintained in ACP's files. (Supp. Brower Decl., ¶ 6 ("these later-produced documents were in the possession of [Debtor's wife] Patty Brower…These documents did not show up when I searched my files, but only when Ms. Brower searched her personal files.") Accordingly, the "ACP is now yours" not has not and cannot be authenticated for purposes of satisfying the business records exception and is therefore inadmissible.

The documents proferred by the Defendants to prove the transmutation of the ACP shares are not sufficient to support a finding that Debtor transmuted his ACP stock into Mrs. Brower's separate property. But even if they were potentially sufficient to support such a finding, they are inadmissible. The Bank's MSJ should be granted as to the second claim.

**IV.**
**THE BANK'S MSJ SHOULD BE GRANTED AS TO THE THIRD CLAIM.**

The Defendants argue that the third claim should be dismissed because it is "derivative of the first two causes of action." (Opposition, 13:5-6.) However, for the reasons detailed above, the Bank's MSJ should be granted as to the first and second claims. To the extent the Court rules in the Bank's favor on the first claim, 100% of Coastal would be the property of the bankruptcy estate.[5] Accordingly, Debtor's post-petition conversion of Coastal from a California to a Delaware corporation (among other Coastal transactions) would be subject to avoidance pursuant to 11 U.S.C. § 549. *See In re First Protection, Inc.*, 440 B.R. 821, 830 (BAP 9th Cir. 2010) (when debtor is the sole owner of interest in a business entity, all of the debtor's rights in the entity become property of the estate, including both economic and management rights). To the extent the Bank's MSJ is granted as to the first claim, the Bank's MSJ as to the third claim must also be granted.

**V.**
**CONCLUSION**

For the foregoing reasons and those detailed in its moving papers, the Bank's MSJ should be granted in its entirety.

Dated: August 21, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/ *Isaiah Z. Weedn*
ISAIAH Z. WEEDN
MICHAEL M. LAUTER
Counsel for the Plaintiff,
MUFG UNION BANK. N.A.

[5] Alternatively, the Court could grant the Bank's MSJ as to a portion of first claim (i.e., as to the shares purportedly owned by Mr. Lindley, Mr. Nobles, Mr. Babcock, and/or Mrs. Brower) such that more than 50% of Coastal would be deemed property of the banruptcy.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
Four Embarcadero Center 17th Floor
San Francisco, CA 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>Debtor. | Case No. 15-50801 MEH<br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>Defendants. | Adv. Proc. No. 17-05044 MEH<br><br>**PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO:**<br><br>**(1) SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR.;**<br><br>**(2) DECLARATION OF WILFORD "BUTCH" LINDLEY; AND**<br><br>**(3) DECLARATION OF DAVID BALCH**<br><br>**[DOCKET NOS. 116-1 – 116-4]**<br><br>Date: August 26, 2019<br>Time: 11:00 a.m.<br>Courtroom: 3020<br>Hon. M. Elaine Hammond |

-1- Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 501

Plaintiff MUFG Union Bank, N.A. (the "Bank") hereby submits the following evidentiary objections to: (1) the Supplemental Declaration of Robert Brower, Sr.; (2) the Declaration of Wilford "Butch" Lindley; and (3) the Declaration of David Balch, including certain proffered exhibits referenced within those declarations [Docket No. 116-1 through 116-4], submitted by defendants in opposition to the Bank's Motion for Summary Judgment. [Docket No. 113-1.]

## I. SUMMARY OF OBJECTIONS.

### A. Lack Of Personal Knowledge/ Speculation.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Thus, "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is … rationally based on the witness's perception." Fed. R. Evid. 701. "At a minimum, this means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable." *Pos–A–Traction, Inc. v. Kelly–Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000). Here, the supplemental declaration of Mr. Brower, the declaration of Mr. Lindley, and the declaration of Mr. Balch fail to show actual personal knowledge of the relevant facts stated therein.

Nowhere within the declarations at issue do the declarants substantiate their respective competence to testify to the statements contained within their declarations. For instance, nowhere within either Mr. Brower's supplemental declaration or Mr. Lindley's declaration does either declarant state that he is the custodian of any business records or that either declarant has even reviewed any business records (to the extent such business records exist), that might allow Mr. Brower or Mr. Lindley to testify competently to the facts stated therein. Neither Mr. Brower nor Mr. Lindley provide any basis from which the Court might conclude that either declarant is qualified to authenticate the documents attached to their respective declarations, nor do either declarant state how they are aware

of the documents or their content. Indeed although Mr. Brower dedicates paragraphs of his supplemental declaration allegedly detailing the business transactions of Chateau Julien, including equipment it allegedly owned (Supplemental Declaration of Robert Brower, Sr. ("Supp. Brower Decl."), ¶ 10), how monies were allegedly handled, characterized and accounted for by and between Coastal Cypress Corporation and Chateau Julien (Supp. Brower Decl., ¶¶ 16-18), and leases and sources of income Chateau Julien allegedly received (Supp. Brower Decl., ¶¶ 21-27), Mr. Brower does not testify that he has ***any*** relationship to Chateau Julien that might qualify him to submit a sworn affidavit regarding Chateau Julien's business practices. (*See* Supp. Brower Decl., ¶ 1, stating he is only the "President of Defendant Coastal Cypress Corporation" and was the "sole owner of American Commercial Properties, Inc.".)

Likewise, although Mr. Lindley seeks to provide testimony regarding Coastal's business practices (*see e.g.*, Declaration of Wilford "Butch" Lindley ("Lindley Decl."), ¶ 2 ("Coastal Cypress was merged into Coastal Cypress Corporation ('Delaware') and new shares of stock were issues"), Mr. Lindley does not testify that he has ***any*** relationship to Coastal to qualify him to submit a sworn affidavit regarding Coastal's business practices. (*See* Lindley Decl., ¶ 2, stating only that he is "the sole proprietor of Chualar Canyon Ranch Supply".)

Similarly, the declaration of Mr. Balch ("Balch Declaration") does not seek to introduce testimony based upon his personal knowledge, but rather seeks to introduce the testimony of Ms. Brower. (*See* Balch Declaration, ¶ 2 ("Ms. Brower testified that she had a separate account at Chase Bank until 2015"); ¶ 3 ("Ms. Brower could not locate documentation sufficient to identify her personal account"). Not only is Mr. Balch's declaration improper because it seeks to introduce testimony outside of his personal knowledge, but it is also improper as it seeks to circumvent the Court's prior order precluding Ms. Brower from testifying or submitting any declaration in this matter. [*See* Section F below; *see also* Docket No. 104, ordering that Mrs. Brower is precluded from offering any testimony in this matter, whether "directly or indirectly through discovery

-3-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 503

responses…and any declaration filed by her in this adversary proceeding shall be stricken from the record."]

Simply put, the supplemental declaration of Mr. Brower, and the declarations of Mr. Lindley and Mr. Balch fail to demonstrate that each declarant has personal knowledge sufficient to competently testify to the facts described therein. Fed. R. Evid. 601, 602, and 701. Objections based on this legal theory will be identified as "Lack Of Personal Knowledge/ Speculation."

**B. Lack Of Foundation.**

The declarations at issue provide no details regarding the information that is the source of each declarant's purported beliefs, and thus, those statements lack the legally required foundation. Again, as stated above, neither Mr. Brower's nor Mr. Lindley's declarations state that they are the custodian of any business records that might have been reviewed, nor does either declarant testify that he reviewed any business records in connection with the preparation of his declaration, nor does either declarant describe how he came to possess the requisite foundational information that would allow him to testify competently to the facts stated therein.

Moreover, the declarants fail to properly authenticate the documents attached to their respective declarations. Before a writing can be admitted into evidence and considered by the Court, its genuineness and authenticity must be established according to legal standards. *See e.g.*, Fed. R. Evid. 901. Authentication of a writing requires the introduction of evidence "sufficient to sustain a finding that the item is what the proponent claims it is." *Id*. Typically, such authentication is made from the custodian of records who lays a foundation for a writing's admissibility. Fed. R. Evid. 803(6) (to authenticate copies of business records an affidavit from the custodian of records must identify that "the record was made at or near the time by—or from information transmitted by—someone with knowledge; [] the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling … making the record was a regular practice

-4-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 504

of that activity … all these conditions are shown by the testimony of the custodian or another qualified witness”).

Mr. Brower fails to properly identify the corporate, financial and trust documents attached to his declaration (Exhibits A-J), as he does not describe the mode of preparation, negotiation, maintenance, or execution of those records. He does not even contend that they were made in the ordinary course of business at or near the time of the events described within those documents. Additionally, Mr. Brower fails to properly authenticate certain alleged “internal Bank correspondence and documents” (Exhibits K- R) as he fails to provide any information that might verify his representation that he is qualified to state that the documents attached to his declaration are actually “true and correct” copies of the original documents he claims them to be.

Likewise, Mr. Lindley fails to properly identify the corporate documents attached to his declaration (Exhibits D-E), as he does not describe the mode of preparation, the maintenance or execution of those records, and does not even contend that they were made in the ordinary course of business at or near the time of the events described within those documents. Mr. Lindley also fails to provide any information that might verify his representation that he is qualified to state that the documents attached to his declaration are actually “true and correct” copies of the original documents he claims them to be.

Similarly, Mr. Balch fails to properly identify the financial documents attached to his email identified as Exhibit C to his declaration as he does not state how he came into possession of those documents, how those documents were prepared, and does not provide any information that might verify his representation that he is qualified to state that the documents attached to his email are actually “true and correct” copies of the original documents he claims them to be.

The declarations at issue fail to properly lay a foundation for the facts stated within each of their respective declarations and fail to lay a proper foundation to authenticate any of the documents attached to each of their declarations. Fed. R. Evid. 601, 602, 701 and 901. Objections based on this legal theory will be identified as “Lacks Foundation.”

-5-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.’S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD “BUTCH” LINDLEY AND DAVID BALCH
AA Page 505

**C. Improper Hearsay Evidence.**

The declarations at issue also seek to improperly rely upon, include and amount to inadmissible hearsay. Because the declarants failed to establish that each of them has personal knowledge from which they may base their statements, their statements should be stricken as improper hearsay. They are, quite literally, out of court statements the declarants are attempting to use to prove the truth of the matters asserted in those statements.

Moreover, "all documentary evidence, including contracts [] must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule, such as the business records exception." *Pos–A–Traction, Inc.*, 112 F. Supp. 2d at 1182. The declarants failed to do that here. Not only did the declarants fail to properly authenticate the documents attached to their respective declarations, but the declarants also seeks to prove the truth of the matters asserted within those documents. These documents all constitute hearsay within the meaning of the Federal Rules of Evidence. Fed. R. Evid. 801 *et seq*. Because the declarations fail to lay the proper foundation for the admissibility of the exhibits attached to each of their respective declarations under any exception to the hearsay rule, those materials are inadmissible and cannot be considered by the Court. Objections based on this legal theory will be identified as "Improper Hearsay Evidence."

**D. Improper Legal Opinion.**

The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion. Fed. R. Evid. 701 (lay witness testimony is limited to testimony that is "rationally based on the witnesses' perception"). The declarants attempt to give improper legal opinions in their declarations stating, for example, that "Because of the Bank's unlawful conduct in calling the loan of CJ … Coastal had no choice but to accept this low offer." (Supp. Brower Decl., ¶ 30.) It is the province of this Court to evaluate the parties' conduct and then ultimately determine the merits of this dispute. To the extent

-6-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 506

Mr. Brower, Mr. Lindley and/or Mr. Balch are proper witnesses, their role is limited to describing the facts that each believes supports his proffered characterizations. But the declarants fail to do so and instead provide mere legal conclusions – conclusions they are unqualified to provide. Objections based on this legal theory will be identified as "Improper Legal Opinion."

**E. Violates The Best Evidence Rule.**

Except as otherwise provided, "An original writing, recording or photograph is required in order to prove its content." Fed. R. Evid. 1002. A duplicate is only admissible to the extent there is no genuine question raised about the original's authenticity or the circumstances make it unfair to admit the duplicate. The declarants' testimony regarding what certain documents and agreements purport to say is not only improper lay opinion testimony, but should also be stricken as violating the best evidence rule. Fed. R. Evid. 1002. Simply put, the terms of the documents speaks for themselves. Additionally, there is no way to verify the accuracy of the declarants' characterization and interpretation of those documents and agreements as the declarants failed to attach copies of certain documents and agreements which they each reference and rely upon in their respective declarations. Objections based on this legal theory will be identified as "Violates Best Evidence Rule."

**F. Violates February 6, 2019 Order.**

On February 6, 2019, the Court entered an "Order After Discovery Conference" holding that if Mrs. Brower did not testify at her deposition, "individually and as the FRCP 30(b)(6) representative of ACP [American Commercial Properties, Inc.] and the [Patricia Brower] Trust", she would be "precluded from offering any testimony at trial, directly or indirectly through discovery responses or by an expert's reliance upon her testimony; and any declaration filed by her in this adversary proceeding shall be stricken from the record." [Docket No. 104.] It is undisputed that Mrs. Brower did not provide any deposition testimony in connection with this litigation. (*See, e.g.*, Supp. Brower Decl., ¶ 7.) As a result, attempts to introduce Mrs. Brower's testimony and/or discovery responses through

the declarations of Mr. Brower and Mr. Balch are improper. (*See e.g.*, Supp. Brower Decl., ¶ 4 ("Ms. Brower used these monies, which were her separate funds, to purchase her shares in Coastal Cypress"); Balch Decl., ¶ 2 ("In response to the first set of interrogatories, Ms. Brower testified that she had a separate account at Chase Bank until 2015"). Objections based on this legal theory will be identified as "Violates February 6, 2019 Order."

**G. Sham Affidavit.**

It is well-settled law that courts can properly exercise their discretion and disregard declarations submitted in response to a motion for summary motion if the "sham affidavit" "flatly contradicts" prior discovery testimony or was "provided for the sole purpose of creating a genuine issue of material fact." *Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534, 535 (9th Cir. 2012) (holding district court did not abuse its discretion in finding a declaration submitted by a borrower in response to a credit union's motion for summary judgment was a sham affidavit as it contradicted earlier deposition testimony and declarant "made no attempt to explain his prior deposition testimony, nor did he claim he was confused during his deposition"); *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit"); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 942 (N.D. Cal. 2016) ("the sham affidavit rule permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy)"); *Hubbard v. 7-Eleven, Inc*., 433 F. Supp. 2d 1134, 1144 (S.D. Cal. 2006) (disregarding plaintiffs' submitted declarations in opposition to motion for summary judgment which contradicted prior deposition testimony and discovery responses as "A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.")

Declarants attempt to "correct several [alleged] misstatements of material fact in Union Bank's moving papers in support of its motion for summary judgment" by now providing self-serving testimony in their declarations in an attempt to contradict prior

-8-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 508

sworn deposition testimony and/or sworn discovery responses provided to the Bank during this litigation. Such declarations are "sham affidavits" which should be disregarded by the Court as "a party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." *Hubbard*, 433 F. Supp. 2d at 1144. Objections based on this legal theory will be identified as "Sham Affidavit."

## II. OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR.

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 2: "This declaration serves to correct several misstatements of material fact in Union Bank's moving papers in support of its motion for summary judgment."<br><br>(Brower Supp. Decl., ¶ 2) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 3: "Union Bank has failed to disclose that it has possession of records showing that Patty Brower was the 100% owner of ACP. Specifically, as part of the Bank Reform Act that was created after the 2007 market crash, banks were required to request more information from customers. One of those requests required ACP (and Coastal Cypress) to annually forward CCC and ACP Income Tax returns to the bank. Union Bank received ACP tax returns with Patricia Brower being the owner from at least 2009 through the end of the loan extensions. ACP no longer has in its possession the 2009 and 2010 tax returns, but a true and correct copy of the 2011 ACP tax return is attached hereto as Exhibit A. Schedule K (page 6) of the tax return reflects that Patty Brower owns 100% of ACP. This tax return was provided to Union Bank during calendar year 2012. True and correct excerpts of ACP | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

| Evidence | Objections | Ruling |
|---|---|---|
| tax returns for years 2012-2014 are attached hereto as Exhibit B. The excerpts from the tax returns reflected in Exhibit B likewise show that Patty Brower owned 100% of ACP stock, and these tax returns were provided to Union Bank shortly after they were prepared (which was several months following the close of the calendar year reflected in each return.)"<br><br>(Brower Supp. Decl., ¶ 3, Exs. A & B.) | | |
| ¶ 4: "Union Bank misstates the amount of money personally owned by Patty Brower prior to her marriage. The prenuptial agreement references that Ms. Brower had in excess of $515,000 worth of personal property prior to the marriage. (*See* Doc 10901, p. 22 of 23.) The document as originally typed contained a typo and stated "$15,000," but the agreement was amended by hand to indicate that Ms. Brower had $515,000 prior to our marriage. The change was initialed by both of us. Ms. Brower used these monies, which were her separate funds, to purchase her shares in Coastal Cypress."<br><br>(Brower Supp. Decl., ¶ 4) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 5: "As my prenuptial agreement stated, I had in excess of $1 million in personal property prior to my marriage with Patty Brower, and I used that money to start ACP."<br><br>(Brower Supp. Decl., ¶ 5) | **Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-10- Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 510

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 6: "Union Bank states that certain documents evidencing my transfer of ACP to Patty Brower were produced two years after I had represented that all such documents had been produced. (Brief at 14:3-4.) It is critical to note that these later-produced documents were in the possession of Patty Brower. At the time of my earlier document production pursuant to the 2004 examination, I did not know that Patty Brower had kept copies of those personal notes all these years later. Those documents did not show up when I searched my files, but only when Ms. Brower searched her personal files."<br><br>(Brower Supp. Decl., ¶ 6) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 7: "Union Bank notes that Patty Brower has been precluded from testifying in this matter, but it fails to note that this testimony exclusion was due to Ms. Brower's health."<br><br>(Brower Supp. Decl., ¶ 7) | **Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 8: "Union Bank makes several additional misstatements concerning Patty Brower. First, Union Bank contends that Ms. Brower did not have a separate bank account after our marriage. That is incorrect. Ms. Brower had a separate account at Chase Bank, which was disclosed to Union Bank in discovery. Second, Union Bank questions whether Ms. Brower ever paid any money for her shares in Coastal Cypress. During the early 1980s, Ms. Brower paid $125,000 for her shares - from her separate property money that she brought into our | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates February 6, 2019 Order.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-11- Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 511

| Evidence | Objections | Ruling |
|---|---|---|
| marriage."<br><br>(Brower Supp. Decl., ¶ 8) | **Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 9: "Union Bank contends that Butch Lindley (aka Chualar Canyon Ranch Supply, "CCRS") did not contribute anything of value to Coastal Cypress Corporation, and thus Mr. Lindley's share certificates are void. That is incorrect. Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services. For example, Mr. Lindley had extensive relationships in the wine industry in the local region and he know of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. Mr. Lindley also had the required connections to have this equipment installed. This equipment included processing tanks and other processing equipment. Coastal Cypress owned much of this equipment. Because of Coastal's capacity increase, Coastal could charge higher rents to its two tenants (Chateau Julien (the licensing entity) and Great American Wineries (the winery)). Coastal's ability to charge higher rents, in tum, was due to Mr. Lindley' s services on behalf of Coastal, prior to receiving his shares of stock."<br><br>(Brower Supp. Decl., ¶ 9) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 10: "I have attached as Exhibit C a true and correct list of itemized equipment owned by Coastal Cypress, Chateau Julien, and Great American Wineries as of 2014. I have annotated which of the three entities owned each piece of equipment. ("CCC" stands for Coastal, "CJ" stands for Chateau Julien, and "GAW" stands for Great | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-12-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 512

| Evidence | Objections | Ruling |
|---|---|---|
| American.) I wrote the word "Butch" next to those items of equipment that were purchased based on Butch Lindley's connections and services rendered. As the chart shows, Mr. Lindley was instrumental in purchasing 16 pieces of equipment, including 9 pieces of equipment for Coastal Cypress. Much of this equipment pre-dated Mr. Lindley's issuance of stock in 1987 and was the basis for the issuance of that stock. Based on the equipment that Coastal purchased through Mr. Lindley's efforts, Coastal Cypress was able to charge higher rents to Chateau Julien and Great American Wineries."<br><br>(Brower Supp. Decl., ¶ 10, Ex. C) | **Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 11: "At that time, Butch Lindley was well known in the agricultural and wine industry in the Central Coast (and beyond), and his affiliation with the global entity, including Coastal Cypress, brought instant credibility to our operations. This all was a significant benefit to Coastal Cypress."<br><br>(Brower Supp. Decl., ¶ 11) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 12: "Attached as Exhibit D are true and correct copies of the share certificates issued to Richard Babcock and Anthony Nobles by Coastal Cypress (California) in 2011. Union Bank contends that none of the money contributed by Richard Babcock or Anthony Nobles was ever deposited into Coastal Cypress Corporation, and thus their shares are void. That is incorrect. Attached as Exhibit E are true and correct excerpts from Coastal Cypress' 2011 general ledger, which reflect the issuance of 250,000 shares of preferred stock in 2011. | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-13-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 513

| Evidence | Objections | Ruling |
| --- | --- | --- |
| (Ex. E at pp. 2-3.) The monthly back-up reflects the months in which consideration was received."<br><br>(Brower Supp. Decl., ¶ 12, Exs. D & E) | **Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 14: "First, Babcock and Nobles were scheduled to purchase their shares in late January 2011. By early January 2011, Coastal Cypress' bank account was sufficiently low that it could not make its debt payments to Pacific Capital Bank (Union Bank's predecessor). On January 3, 2011, I personally loaned $40,000 to Coastal Cypress, with the understanding that I would be paid back when Babcock/Nobles made their payments. (A true and correct copy of the documentation surrounding this transaction, including my check to Coastal and Coastal's bank statement for January 2011, is attached hereto as Exhibit F.)"<br><br>(Brower Supp. Decl., ¶ 14, Ex. F) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 15: "This $40,000 transaction was listed on Coastal Cypress' general ledger as a "cash receipt for paid-in capital" for January 2011 (see Ex. E, page 31), and was also listed as a cash "Capital Receipt" for January 2011, (*see* Ex. E, page 29). (The transaction itself was not entered into the ledger until May 9, 2011, but it was allocable to the January time period). In March 2011, Anthony Nobles paid $40,000 on behalf of Richard Babcock for Mr. Babcock's shares. That money was paid into my bank account (a true and correct copy of my April 12, 2011 bank statement is attached hereto as Ex. G), as repayment of my January 2011 loan to Coastal | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-14- Case No. 17-ap-05044

SMRH:4852-9731-0112.2 PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 514

| Evidence | Objections | Ruling |
|---|---|---|
| Cypress. The $40,000 was promptly paid out to Chateau Julien. (A true and correct copy of the $40,000 check to CJ is attached hereto as Exhibit H.)<br><br>(Brower Supp. Decl., ¶ 15, Exs. G & H) | | |
| ¶ 16: "Further, on January 31, 2011, I received a wire transfer of $200,000 from Anthony Nobles for Mr. Nobles shares in Coastal Cypress. (A true and correct copy of my bank statement for the relevant time period ending February 11, 2001, is attached hereto as Exhibit I.) $150,000 of that money was wire transferred to Chateau Julien as a loan from Coastal to Chateau Julien. (See Ex. I at p. UBC 27986, evidencing outgoing wire of $150,000). This loan was also classified as a note receivable from CJ to Coastal, as reflected in the general ledger under section 1020-000-26 000. *See* Ex. E at 27.) The $150,000 loan from Coastal to CJ is also listed as "Paid in Capital" in the General Ledger. (*See* Ex. E. at p. 28.)"<br><br>(Brower Supp. Decl., ¶ 16, Ex. I) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled |
| ¶ 17: "Additionally, $50,000 of the money paid by Nobles was transferred from my bank account directly into Coastal Cypress via check number 8948. Attached as Exhibit J is a true and correct copy of the February 12, 2011 bank statement and copy of check 8948; *see also* Ex. E at 3 pp. 27-28; Exhibit I (Brower bank statement for February 11, 2011; and Declaration of Robert Brower, dated July 29, 2019, at ¶¶ 3-8.) This money was shown as a "cash receipt" and "paid in capital" on the general ledger. (Ex. E at 27-28.)" | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled |

-15- Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 515

| Evidence | Objections | Ruling |
|---|---|---|
| (Brower Supp. Decl., ¶ 17, Ex. J) | | |
| ¶ 18: "Finally, as Union Bank concedes, Richard Babcock paid an additional $10,000 for his shares. This money was loaned from Coastal to CJ, and Mr. Babcock paid this money directly to CJ. This transactions was not added to the general ledger until December 2011. (Ex. E at 3.)"<br><br>(Brower Supp. Decl., ¶ 18) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 19: "By this litigation, Union Bank is effectively seeking to transmute Coastal Cypress into a guarantor of the Chateau Julien debt. This is not the first time that Union Bank has tried this tactic."<br><br>(Brower Supp. Decl., ¶ 19) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 20: " The most recent appraisal of Coastal's property, in November 2013, valued the property at $11 million, which equates to security with a loan to value of 43%."<br><br>(Brower Supp. Decl., ¶ 20) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-16-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 516

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 21: "CJ's monthly lease payments to Coastal represented Coastal's main source of income, from which Coastal was able to make its monthly payments to the Bank."<br><br>(Brower Supp. Decl., ¶ 21) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 22: "The Bank was aware that Coastal's main source of income was its payments from CJ, and that without the monthly CJ payments, Coastal would lack sufficient income to service its loan obligations. Therefore, the continuing viability of CJ was of the utmost importance to the Bank - a fact that was known to the Bank. At the time the 2007 Coastal Loan Documents were being negotiated between Coastal and the Bank, CJ had existing loans with the Bank. Immediately prior to signing the Coastal Loan Documents on behalf of Coastal and himself, I was informed by Roland Pascua, a Vice-President and Loan Officer at SBBT (Union Bank's predecessor in interest), that SBBT would not call the CJ loans, so long as CJ remained current on the its monthly payments."<br><br>(Brower Supp. Decl., ¶ 22) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 24: "Immediately prior to Mr. Brower's signing the guarantee, Mr. Pascua reiterated and re-confirmed the Pascua Promise."<br><br>(Brower Supp. Decl., ¶ 24) | **Improper Hearsay Evidence.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-17-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 517

| Evidence | Objections | Ruling |
| --- | --- | --- |
| ¶ 25: "At the maturity date of November 2, 2013, CJ did not pay-off the loan, but rather, pursuant to the Pascua Promise, it continued making all monthly payments. Nonetheless, despite the Pascua Promise, on March 27, 2014, the Bank declared a default under the Loan, notwithstanding the Pascua Promise. CJ continued making all interest payments, even after the bank issued the notice of default." (Brower Supp. Decl., ¶ 25) | **Lack of Personal Knowledge/Speculation.** **Lack of Foundation.** **Improper Hearsay Evidence.** **Improper Legal Opinion.** **Sham Affidavit.** | ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled |
| ¶ 26: "Upon information and belief, the Bank realized that it would face significant difficulty in getting repayment of the CJ asset-based loan. Critically, the CJ debt was not guaranteed by Coastal, nor was it secured by a deed of trust against Coastal's property. Nonetheless, upon infonnation and belief, beginning no later than 2012, the Bank began to develop a plan whereby it would use the equity in Coastal' s property to cover both debts - which was sufficient to cover both the Coastal and CJ debt." (Brower Supp. Decl., ¶ 26) | **Lack of Personal Knowledge/Speculation.** **Lack of Foundation.** **Improper Hearsay Evidence.** **Sham Affidavit.** | ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled |
| ¶ 27: "Upon information and belief, the Bank understood that Coastal was dependent on the rental payments it received from CJ to make its own loan payments to Coastal. Upon information and belief, the Bank decided to threaten the ongoing viability of CJ, which would force Coastal to the negotiating table and pledge its property in support of the CJ loan." (Brower Supp. Decl., ¶ 27) | **Lack of Personal Knowledge/Speculation.** **Lack of Foundation.** **Improper Hearsay Evidence.** **Sham Affidavit.** | ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled ☐ Sustained ☐ Overruled |

-18- Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 518

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 28: "Alternatively, upon information and belief, the Bank believed that if it put CJ out of business, Coastal would no longer be able to make its own debt payments, and the Bank could force a foreclosure of the Coastal property, make a credit bid at the foreclosure sale, and take the entire equity upside of the Coastal property for itself. Under this scenario, the Bank would receive sufficient funds to pay for the CJ debt, while still having all rights against CJ and the guarantor – a tremendous windfall."<br><br>(Brower Supp. Decl., ¶ 28) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "Numerous internal Bank correspondence and documents corroborate the allegations of the Bank's scheme…"<br><br>(Brower Supp. Decl., ¶ 29) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "February 16, 2013: In discussing a potential workout of both the CJ and Coastal debt, Carrie Lee of Union Bank noted that 'my initial thought was to call the default and forbear for a short period so Bob Brower can look for a new bank ... we may have to be a little tougher with this one.' She continued by noting that 'HOWEVER-problem #1, we don't have docs. It will be a little hard to call a default. Problem #2, we should play nice so we can get him to cooperate with us on an ABL audit because as of right now, we don't know the true value of our | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-19-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 519

| Evidence | Objections | Ruling |
|---|---|---|
| collateral. (A true and correct copy of this correspondence is attached hereto as Exhibit K.)<br><br>(Brower Supp. Decl., ¶ 29, Ex. K) | **Sham Affidavit.** | ☐ Sustained<br>☐ Overruled |
| ¶ 29: "August 20, 2013: Union Bank began seeking ways to get cross-guarantees, which "were sorely lacking at SBBT or the predecessor it acquired." (A true and correct copy of this correspondence is attached hereto as Exhibit L.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. L) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "January 10, 2014: Carl Coleman of Union Bank proposed seeking to, in effect, consolidate the CJ and Coastal debts, by "load[ing] up as much as sensible" on the Coastal loan (secured by the real estate), with a much lower line of credit to CJ. One week later, Mr. Coleman noted that "we continue to try and find a solution to the airball with this borrower." (A true and correct copy of this correspondence is attached hereto as Exhibit M.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. M) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "January 15, 2014: Union Bank's true intentions were disclosed in a January 15, 2014 email from Jaime Lontoc to Carl Coleman: "If we extend the ABL as is and give CCC time to find a take-out, I fear that it really may find a | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-20-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 520

| Evidence | Objections | Ruling |
| --- | --- | --- |
| refi. If CCC does refi the $4,740M in mortgages in 2014, a not impossible task at a 43% LTV, we are stuck with the CJ UCC debt of $4,850M ($3,820M bank balance). No lender will take out the CJ debt because the margined collateral value is so low (read further below): We can mitigate this risk by including a negotiated required paydown on the ABL line as a condition of the forbearance extension. As you mention ... there is plenty of equity ... so if they are really committed to making a deal work ... this should not be a problem." (A true and correct copy of this correspondence is attached hereto as Exhibit N.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. N) | **Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "January 30. 2014: Union Bank: recognized that, while Coastal's payments were current, "repayment is entirely dependent on weak borrower CJ, the non-guarantor Operating Company." In that same memo, Union Bank notes that the Coastal debt "and the related debt, CJ, are exit credits. We hope to secure all related debt with the CCC real estate and get cross guarantees." (A true and correct copy of this correspondence is attached hereto as Exhibit O.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. O) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "February 6, 2014: Carl Coleman of Union Bank noted: "***looks like it's hardball with Chateau Julien.***" (A true and correct copy of this correspondence is attached hereto as Exhibit P.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. P) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-21-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH
AA Page 521

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 29: "March 12. 2014: the "goal" of the bank's proposal was to get as much of the [CJ] debt loaded onto the winery property as possible." An email that same day noted the following: "***Please impress on all the members of CCC that they need to look to help CJ, the source of cash flow that pays its mortgages, because management will go down difficult paths if there is no satisfactory resolution.***" (A true and correct copy of this correspondence is attached hereto as Exhibit Q.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. Q.) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 29: "May 6. 2014: Union Bank again acknowledged that "debt service of the Coastal Cypress facilities are dependent on the lease performance from CJ," and if "Coastal Cypress begins to default on its debt service," then Bank could foreclose on the properties. (A true and correct copy of this correspondence is attached hereto as Exhibit R.)"<br><br>(Brower Supp. Decl., ¶ 29, Ex. R) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 30: "Beginning in 2012, Coastal began looking for a purchaser of the real property assets. By late 2014, Coastal had an offer of$13.5 million for the real property assets. Upon information and belief, the prospective purchaser was aware of the problems that Coastal and Chateau Julien were having with Union Bank, and revised their offer downwards, to a lowball offer of $12 million. Because of the Bank's unlawful conduct in calling the loan of CJ, and essentially preventing CJ from making rental payments to Coastal, Coastal had no choice but to accept this low offer. If Coastal was not put in this situation by the unlawful conduct and scheming of the Bank, Coastal would not have | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-22-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 522

| Evidence | Objections | Ruling |
|---|---|---|
| accepted this offer.” (Brower Supp. Decl., ¶ 30) | | |

**III. OBJECTIONS TO DECLARATION OF WILFORD “BUTCH” LINDLEY**

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 2: “Coastal Cypress was merged into Coastal Cypress Corporation (“Delaware”) and new shares of stock were issued. Attached as Exhibit B is a true and correct copy of CCRS stock certificate in Coastal Delaware.” (Lindley Decl., ¶ 2, Ex. B) | **Lack of Personal Knowledge/Speculation.** | ☐ Sustained ☐ Overruled |
| | **Lack of Foundation.** | ☐ Sustained ☐ Overruled |
| | **Improper Hearsay Evidence.** | ☐ Sustained ☐ Overruled |
| | **Violates the Best Evidence Rule.** | ☐ Sustained ☐ Overruled |
| | **Sham Affidavit.** | ☐ Sustained ☐ Overruled |
| ¶ 3: “CCRS did not pay cash for his shares. Rather, CCRS provided certain goods and services. For example, I had extensive relationships in the wine industry in the local region and I knew of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. I also had the required connections to have this equipment installed. This equipment included processing tanks and other processing equipment. I have attached as Exhibit C a listing of equipment provided to me by Bob Brower, the President of Coastal.” (Lindley Decl., ¶ 3, Ex. C) | **Lack of Personal Knowledge/Speculation.** | ☐ Sustained ☐ Overruled |
| | **Lack of Foundation.** | ☐ Sustained ☐ Overruled |
| | **Improper Hearsay Evidence.** | ☐ Sustained ☐ Overruled |
| | **Violates the Best Evidence Rule.** | ☐ Sustained ☐ Overruled |
| | **Sham Affidavit.** | ☐ Sustained ☐ Overruled |

-23-
Case No. 17-ap-05044
SMRH:4852-9731-0112.2
PLAINTIFF MUFG UNION BANK, N.A.’S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD “BUTCH” LINDLEY AND DAVID BALCH
AA Page 523

| Evidence | Objections | Ruling |
| --- | --- | --- |
| ¶ 3: "I understand that Mr. Brower has indicated which pieces of equipment were owned by which entity. I am without sufficient information to verify Mr. Brower's representation. Nonetheless, I can state that, where my name is listed next to certain equipment, I was in fact involved in purchasing that equipment (with the exception of the bridge crane on the second page, which I do not recall one way or the other)."<br><br>(Lindley Decl., ¶ 3) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 3: "In general, given my knowledge of the industry, when I came across equipment that I thought Mr. Brower could use at one of the combined entities, I passed along the referral. I believe this was of significant benefit to each of the entities, including Coastal Cypress. Much of my activity pre-dated the issuance of stock from Coastal to CCRS." | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |
| ¶ 4: "I understand that Union Bank is questioning whether I acted in my capacity as a shareholder of Coastal Cypress. The answer is "yes." I attended and voted at two meetings of shareholders of Coastal Cypress. (True and correct copies of the Waiver of Notice and Consent to Holding the Annual Meeting of the Shareholders of Coastal Cypress Corporation for 1988 and 1989 are attached hereto as Exhibit D.)<br><br>(Lindley Decl., ¶ 4, Ex. D) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled<br><br>☐ Sustained<br>☐ Overruled |

-24- Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 524

| Evidence | Objections | Ruling |
| --- | --- | --- |
| ¶ 4: "I also was required to approve the merger of Coastal California into Coastal Delaware. (Attached as Exhibit E is a true and correct copy of corporate actions signed by me on behalf of CCRS, in its capacity as shareholder.)"<br><br>(Lindley Decl., ¶ 4, Ex. E) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Improper Legal Opinion.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Sham Affidavit.** | ☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled |

## IV. OBJECTIONS TO DECLARATION OF DAVID BALCH

| Evidence | Objections | Ruling |
| --- | --- | --- |
| ¶ 2: "In response to the first set of interrogatories, Ms. Brower testified that she had a separate account at Chase Bank until 2015 (response #2), and that the Brower Trust currently had an account at Chase Bank (response #2). True and correct copies of Ms. Brower's Responses to Special Interrogatories and the Brower Trust's Responses to Special Interrogatories, are attached hereto as Exhibits A and B."<br><br>(Balch Decl., ¶ 2, Exs. A & B) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled |

-25-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER, SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 525

| Evidence | Objections | Ruling |
|---|---|---|
| ¶ 3: "Ms. Brower could not locate documentation sufficient to identify her personal account, but she did produce documentation sufficient to identify the Trust account. Attached as Exhibit C is a true and correct copy of an email I sent to Isaiah Weedn, enclosing identifying information for the Trust's bank account."<br><br>(Balch Decl., ¶ 3, Ex. C) | **Lack of Personal Knowledge/Speculation.**<br><br>**Lack of Foundation.**<br><br>**Improper Hearsay Evidence.**<br><br>**Violates the Best Evidence Rule.**<br><br>**Violates February 6, 2019 Order.**<br><br>**Sham Affidavit.** | ☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled<br><br>☐ Sustained ☐ Overruled |

Dated: August 21, 2019

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By /s/ *Isaiah Z. Weedn*

ISAIAH Z. WEEDN
MICHAEL M. LAUTER
Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

-26-

Case No. 17-ap-05044

SMRH:4852-9731-0112.2

PLAINTIFF MUFG UNION BANK, N.A.'S EVIDENTIARY OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF ROBERT BROWER SR., AND DECLARATIONS OF WILFORD "BUTCH" LINDLEY AND DAVID BALCH

AA Page 526

**Entered on Docket**
**November 20, 2019**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**The following constitutes the order of the Court.**
**Signed: November 20, 2019**

M. Elaine Hammond

**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br>Robert Brower, Sr.,<br>Debtor. | Case No. 15-50801 MEH<br>Chapter 11 |
| MUFG Union Bank, N.A.,<br>Plaintiff.<br>v.<br>Robert Brower, Sr., Patricia Brower, Coastal Cypress Corporation, *a California corporation*, Coastal Cypress Corporation, *a Delaware corporation*, American Commercial Properties, Inc., Anthony Nobles, Wilfred "Butch" Lindley, Richard Babcock, Patricia Brower Trust, and DOES 1-50,<br>Defendants. | Adv. No. 17-5044<br>**ORDER GRANTING IN PART AND DENYING IN PART MUFG UNION BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br>Date: 09/09/19<br>Time: 2:00 p.m.<br>Ctrm: 11 |

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

Plaintiff MUFG Union Bank, N.A.'s cross-motion for summary judgment (Dkt. # 108) came on for hearing September 9, 2019. Ori Katz and Isaiah Weedn appeared on behalf of Plaintiff. Cathleen Giovannini and Michael Vacchio appeared on behalf of Defendants.

The court considered Plaintiff's motion concurrently with the motion for summary judgment (Dkt. # 113) of Defendants Robert Brower, Sr. ("Debtor"), Patricia Brower, Coastal Cypress Corporation, a California corporation ("Coastal"), Coastal Cypress Corporation, a Delaware corporation ("Coastal DE"), American Commercial Properties, Inc. ("ACP"), Anthony Nobles, Wilfred "Butch" Lindley, Richard Babcock, and Patricia Brower Trust.

The court having considered the motion papers of Plaintiff and Defendants, the oppositions, replies, and the arguments from counsel, issues a Memorandum Decision on Motions for Summary Judgment contemporaneously herewith. Good cause appearing, IT IS HEREBY ORDERED THAT, for the reasons stated in the Memorandum Decision,

1. Plaintiff's Motion for Summary Judgment is GRANTED IN PART:
   a. As to Plaintiff's First Claim:
      i. The Coastal shares of Lindley and Babcock are void for lack of consideration, pursuant to California Corporation Code § 409.
      ii. 150,000 of the Coastal shares of Nobles are void for lack of consideration, pursuant to California Corporation Code § 409.
   b. As to Plaintiff's Second Claim, Debtor owns 100% of ACP's shares as either his separate or community property.
   c. As to Plaintiff's Third Claim, the merger of Coastal into Coastal DE is avoided pursuant to 11 U.S.C. § 549 as an unauthorized transfer of Debtor's assets without court authorization.
2. Plaintiff's Motion for Summary Judgment is DENIED IN PART:
   a. As to Plaintiff's First Claim:
      i. The issue of whether 50,000 of the Coastal shares of Nobles are void may not be resolved as a matter of law based on the presence of genuine issues of material fact.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

ii. The issue of whether the Coastal shares of Patricia Brower are void may not be resolved as a matter of law based on the presence of genuine issues of material fact.

**END OF ORDER**

**UNITED STATES BANKRUPTCY COURT**
**for the Northern District of California**

**<u>COURT SERVICE LIST</u>**

All ECF Recipients

**Entered on Docket**
**November 20, 2019**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

**The following constitutes the order of the Court.**
**Signed: November 20, 2019**

M. Elaine Hammond

**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Robert S. Brower, Sr.,<br><br>Debtor. | Case No. 15-50801 MEH<br><br>Chapter 11 |
| MUFG Union Bank, N.A.,<br><br>Plaintiff.<br><br>v.<br><br>Robert Brower, Sr., Coastal Cypress Corporation, *a California corporation*, Wilfred "Butch" Lindley, Patricia Brower, American Commercial Properties, Inc., Anthony Nobles, Richard Babcock, Patricia Brower Trust, and Coastal Cypress Corporation, *a Delaware corporation*,<br><br>Defendants. | Adv. No. 17-5044<br><br>**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date: 09/09/19<br>Time: 2:00 p.m.<br>Ctrm: 11 |

MUFG Union Bank, N.A. ("Plaintiff") and Robert Brower, Sr., Patricia Brower, Coastal Cypress Corporation, a California corporation, Coastal Cypress Corporation, a Delaware corporation, American Commercial Properties, Inc., Anthony Nobles, Wilfred "Butch" Lindley, Richard Babcock, and Patricia Brower Trust (collectively, "Defendants") brought cross-motions for summary judgment (Dkt. #108, #113). The matters were heard September 9, 2019. Ori Katz and Isaiah Weedn appeared on behalf of Plaintiff. Cathleen Giovannini and Michael Vacchio appeared on behalf of Defendants. Following the hearing, the matter was taken under submission. As explained below, the parties' motions for summary judgment are denied in part and granted in part.

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. § 1408. This decision constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

Robert Brower ("Brower") and Patricia Brower ("Patty") married in 1980. Brower founded Coastal Cypress Corporation ("Coastal") as a California corporation in 1982. Coastal initially issued 105,000 shares of stock that year: 80,000 shares to Brower and 25,000 shares to Patty. In 1984, Patty received an additional 125,000 shares of Coastal stock. The 125,000 shares were subsequently placed in Patty's trust ("Patty Trust") after its creation in 2015.

Until 2015, Coastal owned the real property at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Wine Estate"), a roughly 16-acre estate that included a wine tasting room, wine production facility, barrel aging room, offices, outdoor event venues, and vineyards. Brower oversaw the Wine Estate for decades as President of Chateau Julien, Inc. ("CJ"), Great American Wineries, Inc., and Coastal.

In 1987, Coastal issued 335,000 shares to Chualar Canyon Ranch Supply, a company owned by Wilfred "Butch" Lindley. Lindley provided goods and services in exchange for the

shares. In 2011, Coastal further issued 50,000 shares to Richard Babcock and 200,000 shares to Anthony Nobles, who paid a combined $250,000 for the shares.

Brower formed American Commercial Properties, Inc. ("ACP") in 1983. Brower asserts that on November 8, 2000, he gifted all of the ACP stock to Patty. Patty later transferred ownership of the ACP shares into the Patty Trust.

In 2017, two years after Brower filed for bankruptcy, Coastal executed a merger ("Coastal Merger") and transformed from a California corporation to a Delaware corporation. Defendants exchanged their shares in the California corporation for new shares in the Delaware corporation.

**Legal Standard**

Through the motions for summary judgment, Plaintiff seeks to establish that Coastal and ACP are solely the property of Brower's bankruptcy estate. Defendants seek to establish that Lindley, Babcock, and Nobles own collectively 63% of Coastal, and that Patty and the Patty Trust own 13% of Coastal and 100% of ACP.

Federal Rule of Civil Procedure 56, made applicable through Federal Rule of Bankruptcy Procedure 7056, states that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is material if it might affect the outcome of a proceeding under the governing substantive law. In a motion for summary judgment, the moving party bears the initial burden of persuasion in demonstrating that no issues of material fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). A genuine issue of material fact exists when the trier of fact could reasonably find for the non-moving party. *Id*. at 248. The court may consider pleadings, depositions, answers to interrogatories and any affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether the movant has met its burden, the court should consider all reasonable inferences in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

**Analysis**

**A. Lindley, Babcock, and Nobles' Coastal Shares**

Plaintiff argues that Lindley, Babcock, and Nobles did not provide consideration for their Coastal shares, and as a result, their interests in Coastal should be deemed void. Defendants assert Coastal received consideration in exchange for issuance of the stock. Specifically, Defendants assert they provided consideration for their shares in Coastal, the California corporation and these interests were subsequent consideration for Coastal, the Delaware corporation. Here, the court analyzes the issuance of Coastal stock prior to the Coastal Merger.

Pursuant to California Corporations Code § 409(a), a corporation may issue shares for consideration in the form of:

- money paid,
- labor done,
- services actually rendered to the corporation or for its benefit or in its formation or reorganization,
- debts or securities canceled, and
- tangible or intangible property actually received either by the issuing corporation or by a wholly owned subsidiary.

Neither promissory notes of the purchaser (unless otherwise permitted) nor future services may be consideration for shares. Cal. Corp. Code § 409(a). The consideration is determined by the board of directors, or by the shareholders if the articles so provide. Cal. Corp. Code § 409(e). If the consideration is anything other than money for which the shares are issued, the board of directors must state by resolution its determination of the consideration's fair value to the corporation in monetary terms. Cal. Corp. Code § 409(e). Shares issued by a corporation without having received consideration in return are void. *See Cortelyou v. Imperial Land Co.*, 156 Cal. 373, 376 (1909).

The undisputed facts are that (1) Lindley provided services for his shares, and (2) Babcock and Nobles paid a combined $250,000 for their shares, of which $240,000 was paid

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

directly into Robert and Patty Brower's joint bank account and $10,000 was paid directly to CJ. The parties dispute the flow of funds after these initial payments. The issue for the court is whether these transactions satisfy the statutory requirement for issuance of stock.

Lindley Shares

Lindley asserts that he provided goods and services for the benefit of Coastal in the 1980's as consideration for his shares. Specifically, Lindley contends that: (1) he provided grape crops to be used in the production of wine; (2) he assisted Coastal and CJ in CJ's efforts to lease land, grow grapes and produce wine; (3) through his network in the wine industry he helped obtain and install necessary equipment; and (4) due to his reputation in the wine industry, he lent credibility to Coastal and CJ.

As an initial matter, the issuance of shares to Lindley did not satisfy the requirements of Cal. Corp. Code § 409(e). Coastal's board was required to determine the fair value of Lindley's non-monetary consideration and state its determination by board resolution. Lindley provided no evidence that this occurred.

Additionally, Lindley's position is inconsistent with the business operations. It is undisputed that Coastal owned the land upon which the Wine Estate was located. Great American Wineries, Inc. made the wine and CJ sold the wine on Coastal's property. Coastal neither sold nor produced wine. As such, it had no need for wine-making equipment. Even supposing that Coastal owned wine-making equipment, the benefit derived from mere ownership of such equipment was tangential at best.

On the evidence presented, the court finds that the services provided by Lindley did not provide consideration to or for the benefit of Coastal.

Nobles Shares

In January 2011, Nobles paid $200,000 into the Browers' joint account. Nobles maintains that his $200,000 payment to Brower was consideration for the Coastal shares because $50,000 was promptly deposited into Coastal's bank account, and the remaining $150,000 was loaned from Coastal to CJ. The loan was booked on Coastal's general ledger as an account receivable, and in 2015, Coastal received a tax break when this account receivable

was written off as "bad debt." Plaintiff opposes the designation of the $150,000 payment as a Coastal loan, because the money flowed to CJ from the Browers' account.

There is no support for the argument that the $200,000 paid to Brower was "money paid" to Coastal. Nobles asserts that the $150,000 loan is on Coastal's books as "paid in capital," but this is not evidence of "money paid" where the facts establish that the funds never reached Coastal. Cal. Corp. Code § 409(a) recognizes money paid to the issuing corporation or a wholly owned subsidiary. CJ is not a subsidiary. Further, a tax write-off does not fit within any category of consideration authorized by § 409(a). The tax write-off did not occur until four years after the stock was issued. It is therefore equivalent to a promissory note or future service—both of which are expressly prohibited as consideration. The undisputed facts establish that the funds supposedly "loaned" to CJ and later applied as a tax write-off do not satisfy § 409(a)'s requirements.

Nobles asserts for the first time in the Opposition to Plaintiff's motion for summary judgment that $50,000 of the $200,000 wired on January 31, 2011 was subsequently transferred to Coastal. Support for this assertion is provided in the Supplemental Declaration of Robert Brower (#116-1, ¶17). Brower states therein that $50,000 of the funds received from Nobles was transferred by check from Brower's joint account to Coastal. Attached to the declaration is a February 11, 2011 transaction report for the joint account. This report evidences receipt of $200,000 from "ORG TECHNOS DEVELOPMENT LLC" on January 31, 2011. Fourteen transactions later, on February 4, 2011, check number 4898, in the amount of $50,000, is posted. A copy of this check, made payable to Coastal Cypress Corporation, is provided with the February 28, 2011 statement.

Plaintiff objected to the Brower Supplemental Declaration ¶17 on numerous grounds. The bank statements provided in support of this paragraph, Exhibits I and J, lack foundation as Brower has not properly authenticated them, and as such they offer improper hearsay. As a result, this testimony and bank statements are not sufficient to establish on summary judgment that funds received from Nobles were subsequently transferred to Coastal as money paid for stock.

Further, the bank statements raise additional questions not addressed by the parties. In order to determine whether money was paid by Nobles for the Coastal shares the transferor of the $200,000 needs to be identified. Assuming the funds were provided by Nobles, what is the effect of the funds having been commingled with Brower's personal funds? Is tracing appropriate, and if so, what methodology should be applied?

As a result, no consideration was provided for 150,000 of Nobles' shares and the question of whether Nobles paid $50,000 for Coastal shares is not appropriate for resolution on summary judgment.

Babcock Shares

Babcock and Nobles paid a total of $50,000 for Babcock's shares, $10,000 by Babcock and $40,000 by Nobles. Babcock's $10,000 payment went directly into CJ's account; Nobles' $40,000 payment went into the Browers' joint account. Babcock and Nobles assert that the $40,000 paid to Brower satisfied a loan Brower previously made to Coastal.

No portion of the $50,000 was received by Coastal, thus, no money was paid to Coastal. Cancellation of debts or securities is recognized as consideration, but the debt or claim against the corporation must be relinquished by the purchaser as consideration for the shares. *See* 15 Cal. Jur. 3d Corporations § 140 ("'Debts or securities canceled,' as acceptable consideration for the issuance of shares, clearly means a debt or claim against the corporation that the subscriber or purchaser relinquishes as consideration for the shares."); *see also Reed v. Norman*, 41 Cal. 2d 17 (1953). As Nobles' payment was made to satisfy a claim held by Robert Brower, rather than a claim held by Nobles, the alleged $40,000 loan payment is not recognized as a cancellation of debts or securities for purposes of § 409(a). Further, as with Lindley, Coastal's board failed to determine and state the fair value of the cancellation of indebtedness as required by § 409(e).

As such, the funds provided by Babcock do not satisfy § 409's requirements for consideration provided to Coastal.

**UNITED STATES BANKRUPTCY COURT**
**for the Northern District of California**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

<u>"Bona Fide Purchaser" Defense</u>

Lindley, Babcock, and Nobles argue that, even in the absence of sufficient consideration, the "bona fide purchaser" defense applies to preserve their shareholder status. Defendants rely on *Cortelyou v. Imperial Land Co.*, 156 Cal. 373 (1909) and *Michaels v. Pac. Soft Water Laundry*, 104 Cal. App. 349 (Ct. App. 1930).

*Cortelyou* concerned a corporate stock purchase from a general manager, a third-party purchaser whose rights in the shares were at issue. The court upheld Cortelyou's stock purchase on the basis that a subsequent bona fide purchaser should not have his shareholder's rights hindered if a prior transaction was invalid for lack of consideration. The court found Cortelyou "a shareholder to the extent of his purchase." *Cortelyou*, 156 Cal. at 376. The presupposition that Cortelyou paid consideration for the shares was never questioned. *Cortelyou* is distinguishable on the basis the shareholder was a purchaser for value from a prior shareholder. Here, Lindley, Babcock, and Nobles received initial stock issuances from the corporation. Accordingly, *Cortelyou* does not support Defendants' position.

In *Michaels*, two director-stockholders sought to cancel the fraudulent sale of corporate treasury stock after the stock was transferred to a good faith purchaser. The court denied this attempt, because the equities of the case did not favor a corporation benefitting from its own misrepresentation and fraud. Further, this case did not address whether consideration was provided as it was undisputed that it was. Here, Defendants do not allege fraud or misrepresentation on Coastal's part which would justify upholding an otherwise invalid transaction. *Michaels* is therefore inapplicable.

As such, the "bona fide purchaser" defense does not apply. There being no genuine dispute as to the material facts, Plaintiff's request for summary judgment that Lindley and Babcock do no hold valid interests in Coastal is granted and Defendants' request is denied. There being a genuine dispute as to $50,000 of Nobles' payment to Brower, both parties' requests for summary judgment as to Nobles' interest in Coastal is denied.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

**B.  Patty's Coastal Shares**

Plaintiff argues that Patty's Coastal shares are either void for lack of consideration or are community property, and either way are an asset of Brower's bankruptcy estate.  Patty asserts that she purchased the Coastal shares using separate assets and the shares are her separate property.

"Except as otherwise provided by statute, all real and personal property, wherever it is located, acquired by a married person during the marriage while the person is domiciled in California is community property."  Cal. Fam. Code § 760.  The interests of each spouse in community property during the marriage are present, existing, and equal interests.  Cal. Fam. Code § 751.  Neither spouse has any interest in the separate property of the other spouse.  Cal. Fam. Code § 752.  But the general presumption of community property is rebuttable.  *See Marriage of Ciprari*, 32 Cal. App. 5th 83, 91 (Ct. App. 2019). The party contesting community property bears the burden of proof in rebutting the presumption by a preponderance of the evidence.  *In re Marriage of Foley*, 189 Cal. App. 4th 521, 527 (Ct. App. 2010).  Virtually any credible evidence may be used to overcome the presumption.  For example, tracing the assets to a separate property source, showing an agreement or clear understanding between the spouses regarding ownership status, and presenting evidence that the item was acquired as a gift can be sufficient to rebut the presumption.  *In re Marriage of Haines*, 33 Cal. App. 4th 277, 291 (Ct. App. 1995).

Separate property may be acquired during the marriage by gift, devise, bequest, or descent; as rents, issues, and profits of separate property; or as property acquired with separate property funds or proceeds.  *See* Cal. Fam. Code § 770(a).  Property may also transmute from community to separate, by written agreement of the spouses, either before or after marriage and while living together.  Cal. Fam. Code § 850.

In support of her position that the Coastal stock was purchased with her separate assets, Patty relies on (i) the Coastal stock certificate bearing Patty's name and showing the number of shares issued, (ii) Brower's declaration that Patty had $515,000 worth of separate property when they married, and that she paid for the shares using her separate property, (iii)

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

the declaration of her attorney David Balch that Patty disclosed a personal bank account in her discovery responses, and (v) the 1980 premarital agreement between Brower and Patty ("Premarital Agreement").

In exchange for Patty's being excused from deposition, an order was entered precluding Patty from "offering any testimony at trial, directly or indirectly through discovery responses or by an expert's reliance upon her testimony . . ." (Dkt# 104). Balch's declaration is a direct violation of this order and disregarded. Plaintiff also asserted an evidentiary objection to Brower's declaration on the basis that it is inadmissible on multiple grounds. In response, Brower asserted his testimony was based on his personal knowledge as Coastal's chief executive officer. Upon review of Plaintiff's objection, the court overrules it and finds Brower's declaration admissible.

Under § 409(a), corporate stock cannot be validly issued without consideration. Money paid directly to the issuing corporation is an accepted form of consideration pursuant to § 409(a). Patty asserts the Coastal stock was purchased with her separate property. However, neither the stock certificate nor the premarital agreement evidence that money was paid for the shares. Further, while Brower's declaration is admissible, the credibility of his testimony requires evaluation at an evidentiary hearing. As such, the validity of Patty's receipt of stock in Coastal cannot be resolved on summary judgment.

In the interest of judicial efficiency, the court also addresses Patty's argument regarding the Premarital Agreement. Patty asserts that the Premarital Agreement mandates that all property acquired during marriage is separate property; hence, the Coastal shares she acquired are her separate property. Under California law, premarital agreements or marital property agreements may alter the statutory property rights of spouses. Cal. Fam. Code § 1500. The Premarital Agreement stipulates that all property owned or acquired by the spouses is separate property notwithstanding community property laws. Hence, if Patty establishes that she provided consideration from separate property for the Coastal stock, then the stock will also be her separate property.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

As the consideration provided by Patty for Coastal stock is subject to a genuine issue of material fact, summary judgment is denied as to both parties' motions.

**C. Patty's ACP Shares**

The Browers argue that the ACP shares were validly transmuted from Brower's separate property to Patty's separate property.

Plaintiff disputes that the ACP shares were Brower's separate property because they were acquired during the Browers' marriage. Regardless of whether the shares are community property, Plaintiff argues that the November 2000 transfer did not change the character of the stock or eliminate Brower's ownership interest therein.

Married persons may by agreement or transfer, with or without consideration, transmute community property to separate property, or transmute the separate property of one spouse to separate property of the other spouse. Cal. Fam. Code § 850. A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected. Cal. Fam. Code § 852.

To qualify as an "express declaration," the writing must contain language which expressly states that the characterization or ownership of the property is being changed. *In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) (citing *Estate of MacDonald*, 51 Cal. 3d 262, 272 (1990))[1]. The declaration must also include "a clear and unambiguous expression of intent to transfer an interest in the property." *Estate of Bibb*, 87 Cal. App. 4th 461, 468 (Ct. App. 2001).

While the statute does not require any particular words of transmutation, *Estate of MacDonald*, 51 Cal. 3d at 273, courts more frequently find that an "express declaration" is present when the writing at issue is within a formally drafted document such as a deed or contract. *See Estate of Bibb*, 87 Cal. App. 4th at 462 (grant deed conveying real property

[1] *Estate of MacDonald* referred to Civil Code § 5110.730 which became Family Code § 852 in 1992. An analysis of § 5110.730 is for all intents and purposes identical to an analysis of § 852.

from one spouse to both spouses as joint tenants was an "express declaration"); *In re Marriage of Lund*, 174 Cal. App. 4th 40, 51 (Ct. App. 2009) ("Agreement to Establish Interest in Property" unambiguously effected a transmutation of a spouse's separate property into community property); *In re Marriage of Holtemann*, 166 Cal. App. 4th 1166, 1172 (Ct. App. 2008) (transmutation agreement and trust which stated that the spouse's property was "hereby transmuted from his separate property to the community property" was sufficient for valid transmutation).

Conversely, when such formality is lacking, courts find that an "express declaration" is not established. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 591 (Ct. App. 1999) (husband's written instructions to "transfer" stock into his spouse's name was not an expression that ownership of the property was being changed); *In re Marriage of Leni*, 144 Cal. App. 4th 1087, 1096 (Ct. App. 2006) (escrow instructions that community proceeds of a house sale were to be split "50/50" did not expressly declare that the character of the property was being changed); *Estate of Petersen*, 28 Cal. App. 4th 1742, 1744 (Ct. App. 1994) (mere reference of a joint tenancy on an account statement was insufficient for transmutation).

The Browers rely on the following writings: (i) a gift card that reads "ACP is now yours," (ii) a signed note that includes the statement "I am proud to give you all my interest in that company to do as you choose," and (iii) a stock transfer.

Plaintiff objected to the signed note as inadmissible based on Defendants' inability to produce the original, and suspicious circumstances surrounding the production of the document.[2] Patty's counsel conceded at the hearing that the signed note is inadmissible.

Brower also submitted declarations of his intent to transfer property to supplement the writings provided. In enacting the writing requirement of § 852, the Legislature intended to enable courts to validate transmutations without resort to extrinsic evidence. *See Estate of*

---

[2] Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." A duplicate is inadmissible if a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate. Federal Rule of Evidence 1003.

*MacDonald*, 51 Cal. 3d at 272. Accordingly, Brower's declarations are not considered in the analysis.

In reviewing the remaining writings, the court finds that the gift card "ACP is now yours" may be interpreted in several ways. On that basis, it is analogous to the informal written instructions found in *Barneson* and *Leni*. While the card could indicate Brower's intent to transfer the property, it does not expressly provide that the characterization or ownership of the property is changed. The mere intent to transfer property is not enough for valid transmutation without a clear expression that the spouse's interest in the property is being changed. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 ("Transfer is clearly not synonymous with transmutation.").

Nor does the stock transfer provide an "express declaration" sufficient for transmutation. The share certificates were endorsed to Patty by Brower, but the mere act of transferring shares does not express an intent to change the character or ownership of the property. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 (placement of stock belonging to one spouse in the stock brokerage account of the other spouse was not sufficient to establish a transmutation); *Estate of Bibb*, 87 Cal. App. 4th at 469 (DMV printout reflecting the re-registration of an automobile in the name of one spouse to the name of either spouse did not show intent to transmute).

In sum, neither the gift card nor share certificate establish transmutation of property of Brower's separate property to Patty's separate property, or transmutation of community property to Patty's separate property. There is no material fact in dispute as to the writings considered or the existence of other writings. As such, the court finds Plaintiff is entitled to summary judgment that the ACP shares are property of Brower's bankruptcy estate (either as his separate or community property), and the request of Patty and Patty Trust for summary judgment is denied.

**D. Whether Plaintiff's claims are time-barred.**

California Civil Procedure Code § 338(a) provides a three-year statute of limitations for bringing "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

Defendants assert this statute bars Plaintiff's claims. Plaintiff, in response, maintains that the transfers did not occur for failure to satisfy the requirements set by Corp. § 409, and therefore Civ. Proc. § 338(a) does not apply.

In reviewing these issues, other bankruptcy courts have held that the court may determine that certain property belongs to the bankruptcy estate notwithstanding time limitations under state law. *In re Blasingame*, 598 B.R. 864, 875 (6th Cir. BAP 2019). Defendants assert that *Blasingame* does not apply to this case, because Plaintiff seeks affirmative relief to void the shares, contrary to mere declaratory relief. Defendants are incorrect. Plaintiff does not seek to void the alleged stock transfers. Rather, Plaintiff seeks a finding that no transfers occurred at all. This is a determination the court may make at any time. Further, this court ruled as such in denying Defendants' motion to dismiss the adversary proceeding on October 3, 2017 (Dkt. #36). In that motion, Defendants asserted that Plaintiff's request for declaratory relief was a disguised avoidance action pursuant to 11 U.S.C. § 548 (Dkt. #13). This argument was rejected on the basis that Plaintiff's claims only sought declaratory relief (Dkt. #36). As such, the law of the case doctrine requires the same result here unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *In re Rainbow Magazine*, Inc., 77 F.3d 278, 281 (9th Cir. 1996). Defendants presented no evidence of an exception that would prevent application of the law of the case.

As a result, Plaintiff's claims are not time-barred.

**E. Whether the Coastal Merger should be avoided.**

Bankruptcy Code § 549 provides that a trustee may avoid a transfer of property of the estate that (1) occurs after the commencement of the case and (2) is not authorized by the court. Plaintiff asserts that the 2017 Coastal Merger transaction should be avoided, because it is an unauthorized post-petition transfer to the extent Coastal is part of Brower's bankruptcy estate. Defendants assert the merger cannot be unwound because their Coastal shares are valid.

After application of the issues decided herein, the shares are allocated as follows:

- Brower: 230,000 Coastal shares
- Patty (through Patty Trust): 125,000 Coastal shares (subject to further proceedings)
- Nobles: 50,000 Coastal shares (subject to further proceedings)

Brower owned at least 57% of Coastal at the time of the Coastal Merger. This percentage may increase upon determination of Patty and Nobles' shares. But it is undisputed that the Coastal Merger was executed after the filing of Brower's bankruptcy petition. Brower owned more than 50% of Coastal at the time of the merger. As such, § 549 was violated by merger of Brower's interest in Coastal a new entity post-petition, without court authorization and in a manner not otherwise allowed by the Bankruptcy Code.

Plaintiff's request for summary judgment is granted.

**F. Whether Plaintiff's third and fourth claims for relief should be dismissed.**

Defendants assert that Plaintiff's third and fourth claims for relief should be dismissed because they are derivative claims of Plaintiff's first and second claims for relief. And should fail for the same reasons.

This court grants partial judgment in Plaintiff's favor on the first claim and denied Defendant's related claim. On the second and third claims, the court grants judgment in Plaintiff's favor. Plaintiff did not seek summary judgment on its fourth claim. Defendant's claim that it should be dismissed based on denial of the prior claims is without merit.

As such, Defendants' request for summary judgment as to these claims is denied.

**<u>Conclusion</u>**

For the reasons stated herein, the court hereby

(i) grants Plaintiff's request for summary judgment as to Lindley and Babcock's interests in Coastal as consideration was not received by Coastal for the shares, and denies Lindley and Babcock's request for summary judgment;

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

(ii) denies in part and grants in part Plaintiff's and Defendants' requests for summary judgment as to whether consideration was received by Coastal for 150,000 of the shares allocated to Nobles;

(iii) denies Plaintiff's and Defendants' requests for summary judgment as to Patty's Coastal shares;

(iv) grants Plaintiff's request for summary judgment as ACP is Brower's separate or community property, and denies Patty and Patty Trust's request for summary judgment;

(v) grants Plaintiff's request for summary judgment avoiding the Coastal Merger; and

(vi) denies Defendants' request for summary judgment as to Plaintiff's third and fourth claims.

**END OF MEMORANDUM DECISION**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

COURT SERVICE LIST

All ECF Recipients